JOHN MADDOX, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. The prevalence of public excitement against the accused, in the county where the act was committed, added to other causes which might be deemed insufficient in themselves, may well turn the scale in favor of a motion for a continuance.
2. It is the duty of this Court to see that the trial of a criminal case shall not be precipitated, whilst the principles of justice require a postponement. The continuance asked for in this case should have been granted.
3. A juror who has a fixed opinion as to the guilt of the accused, though formed from hearsay, is incompetent to try a criminal case.
4. The facts of this case discussed, with reference to their bearing on the questions decided.

Indictment for murder, in Jones Superior Court. Tried before his Honor Judge HARRIS, October Term, 1860.

The plaintiff in error was indicted for the crime of murder, and being put upon his trial, was convicted.

When his case was called, he moved to continue the same on two grounds, which the presiding Judge overruled and his counsel excepted.

Pending the selection of a jury to pass upon the case, the presiding Judge decided a juror competent who avowed on his *voir dire*, a fixed opinion as to the guilt of the accused from hearsay, and the prisoner excepted.

After the verdict of conviction was rendered, counsel for the prisoner moved for a new trial, which was refused, and prisoner excepted, and asks a reversal of the judgment on the ground of alleged error in the rulings and decisions aforesaid.

This is one of the cases that were burned, and the Reporter is unable to find the record, to give a fuller statement of the case, and therefore refers to the opinion of the Court, as so ably expounded by Mr. Justice Jenkins, in which a very clear statement of the questions in the case may be found.

——————————, for plaintiff in error.

LOFTON, (Solicitor General,) *contra.*

*By the Court.*—JENKINS, J., delivering the opinion.

This was a case of indictment for murder, and conviction. The defendant moved the Court for a new trial, on numerous grounds, all of which were overruled, and the defendant excepted. We deem it unnecessary to consider more than three of these grounds.

1st. It is alleged that the Court below erred in refusing to continue the case, upon the showing made by the defendant. This showing presents two causes for continuance. 1st. The recent commission of the homicide charged, (less than two months having elapsed between the killing and the trial,) and the prevalence of a degree of excitement in the county, against the accused, which rendered it unsafe for him to go to trial at that term of the Court.

The affidavit of the accused on this subject is very distinct, and he offered to corroborate it by the affidavits of two of his counsel. These latter the Court refused to consider, because the proposed affiants resided out of the county of Jones, at the same time, holding the accused to the adduction of evidence, other than his own, of the excitement in the public mind.

This latter requisition, however, was subsequently abandoned by the Court, and the continuance on this ground refused upon the authority of a decision of this Court in the case of Thompson vs. The State, 24 Ga. R., 297. (See page 303.) In that case this Court held, that since the passage of the Act of 1856, providing additional and thorough tests of the competency of jurors, there was little danger to be apprehended by those charged with crime, from unfriendly excitement in the public mind, and that the existence of such excitement was not of itself a sufficient showing for a continuance of a criminal case.

In the case of Thomas vs. The State, 27th Georgia Reports, 287, it was ruled, "that popular excitement *alone* is not sufficient to procure the continuance of a cause, *except under extraordinary circumstances.*" We are not prepared to say that the affidavit of the accused in this case shows any

Maddox *vs.* The State of Georgia.

*extraordinary* degree of popular excitement, or any extraordinary circumstances likely to swell that excitement to a height beyond what usually results from homicide.   Nor can we say that had this been the only showing for a continuance it should have received the favorable consideration of the Court.

In the connection in which it was presented, however, it was worthy of consideration.   In all cases, in which this cause is superadded to others, if the Court have a doubt of the sufficiency of those other causes, this one may very properly turn the scale in favor of the motion to continue, even though there be shown no "extraordinary" circumstances. This I understand to be the effect of past rulings on this subject, and I should be very reluctant to see the force of such a showing further diminished.

2d.  The affidavit for continuance under consideration went much further.   It alleged that before he shot deceased he had himself been shot, as he then and still believed by deceased, but that he is unable to prove this, and uninformed as to what the bystanders, who were numerous, know of the circumstances, by reason of his arrest on the day following that of the homicide, his continued confinement in jail ever since, his inability from poverty to employ counsel to prepare his case, and his lack of a friend to perform that service for him ; that he believes diligent inquiry would bring to light the person who actually shot him ; that the bill of indictment had been found against him at the present term, and that he had, by the charity of others, been provided with counsel only since its commencement.

The Court below held, that because the accused had residing in the neighborhood a father and a brother, he might, through their instrumentality, have prepared his case for trial during his confinement.   But he swears positively that he had no friend to do this office for him.   The existence of the relationship, referred to by the Court, does not negative the averment in the affidavit. and the close confinement of the accused, sick and sore from his wounds the while, relieves him from the imputation of laches.

He alleges that he had been sorely wounded before he fired, by whom he does not positively know, but that he then believed, and still believes, that he was returning the fire of his assailant, and that with further time he will be able to procure proof of it. It is objected that he names no absent witness by whom he expects to be able to prove the fact. But this is not an application for a continuance, because of the absence of a known witness to prove a particular fact, nor is the absence of a known witness the sole sufficient ground for a continuance. The ground of application is the existence of a fact important to his defence, of which he believes there were witnesses who may be ascertained, but whom he has thus far been unable to ascertain, for reasons clearly stated.

This is his case. The 175th section of the 14th division of the Penal Code provides that "every person against whom a bill of indictment is found, shall be tried at the term of the Court the indictment is found, unless the absence of a material witness or witnesses, *or the principles of justice* should require the postponement of the trial, and then the Court shall allow a postponement, etc. Now, taking this affidavit to be true in fact, (and the law does not permit a traverse of it,) we think the principles of justice peremptorily required a postponement.

But again, in Allen vs. The State, 10th Ga. R., 85, this Court held that "a party who is conscious of his innocence, should not be compelled to incur the expense and labor of procuring testimony until there is a bill found. Under this ruling had the accused known of a witness by whom he could prove the fact in question, had he failed to subpœna him before bill found, and had he in consequence thereof been unready for trial, his showing would have been good. How much more when he swears that he believes the fact to exist, and that there are witnesses who know it, but that circumstances beyond his control have prevented the investigation and inquiry necessary to their ascertainment.

We commend the zeal and fidelity with which our brethren of the Circuit Bench resist unnecessary delays in the administration of penal justice, and we know well how often

such delays are sought at their hands, but we know that this zeal may become a virtue in excess, and it is our bounden duty, so far as in us lies, to see that even an honest and enlightened zeal in the public service shall not precipitate the trial of a case whilst "*the principles of justice require a postponement.*" Connecting the two grounds of this showing we are clearly of opinion it should have been allowed.

3d. The next ground of error is the ruling that the juror Dorsett was competent. It seems that to the first question propounded to this juror, under the *voir dire,* he failed to answer categorically, but replied, "I have formed and expressed an opinion (as to the guilt or innocence of the prisoner) from hearsay." This was not such an answer, nor in such form, as the statute contemplates. It presented a case of some embarrassment, and it seemed to be conceded on all sides that further interrogation to the same point, before propounding the remaining questions, or disposing of the juror, was proper. The Court permitted the counsel for the accused to propound this question, Is the opinion you have formed and expressed from hearsay a fixed opinion? He replied, "It is." Here counsel for the accused insisted that the juror should be adjudged incompetent. But the Court deemed it proper to apply still another test, and put to the juror this question, "Would or would not your opinion yield to testimony? Do you or not think that you could do justice to the prisoner?" To which he replied, "I think I could, but I would rather get off." The Court, after propounding the other statutory questions, and receiving answers, declared the juror competent, and he was put upon the prisoner, and peremptorily challenged.

Was the last test applied by the Court, aside from the statute, proper? Here was a juror declaring that he had a fixed opinion which he had expressed, not indeed "from having seen the crime committed, or from having heard any portion of the evidence under oath," as expressed in the statute, but still a *fixed opinion.* With this state of mind unexplained, the Court would not, and did not, put him upon the prisoner. Supposing this "*fixed opinion*" to be

adverse to the prisoner, (as indeed the form of the next question indicates that the Court understood it to be,) how far does the most favorable result of the next test remove the difficulty? The doctrine of the law is, that "every man accused of crime is presumed innocent until he is proven guilty." Surely, no just civilian would expunge or qualify this principle. Taking, then, for our guide this principle, what is the state of mind proper to a juror entering upon a trial? Clearly such, that before he could inwardly resolve that the accused was guilty, there must be submitted to him proof of his guilt. In what state of mind does this juror answer to the Court's question show him to have been? Such that he firmly believed the prisoner guilty, but might by possibility be convinced that he was innocent.

He should have been without opinion; he had fixed opinion. He should have presumed the accused innocent; he believed him guilty. His mind should have demanded *proof of guilt* to restrain him from acquitting—it in fact demanded proof of innocence to restrain him from convicting. If one person, so minded, might be placed upon a jury, twelve might, and there the onus would be upon the accused, and not upon the State. It is argued, that a fair construction of the statute requires that the juror should not be set aside as incompetent by reason of his answer to this first question, unless the answer disclose that he has "formed and expressed an opinion from *having seen the crime committed, or from having heard a part of the evidence under oath.* But let us look into the spirit of the statute. Are its requisitions satisfied, by a categorical answer in the negative, to that question? Is he, therefore, declared to be competent? No. The statute requires that still other questions should be propounded, probing deeper the state of his mind. Let us look again in this view, to the condition of the juror's mind, when he had answered the questions of the Court, and before the second and third statutory questions had been propounded. He had a "*fixed* opinion, which *might yield to* evidence; he thought he could do justice to the prisoner."

With this avowal of a fixed opinion, was it not a mockery

Maddox *vs*. The State of Georgia.

to ask *him* the two next succeeding statutory questions, viz:
" Have you resting on your mind any bias or prejudice for
or against the prisoner?    Is your *mind* perfectly *impartial*
between the State and the accused?"    If *fixed opinion* be
not a *bias of mind*, I would like to hear a full, satisfactory
definition of the word bias.    Lexicographers define it "a
*leaning* of the mind—a prepossession."    But it is said, the
juror in *fact* answered both those questions satisfactorily.
The record does not disclose that he did so, but we must
presume he did, or the Court would not have put him upon
the prisoner.

Thus answering, charity to the juror requires us to pre-
sume, that he did not understand the questions he answered.
But take a practical test the other way.    What sane man,
selecting his triors, under a capital charge, would have taken
this juror, when put upon him?    It was not then a question
of doubt, of discretion ; he was under an imperious necessity
to object to the juror.    To put such a juror upon a prisoner
is, in our judgment, equivalent (though certainly not intend-
ed) to denying him one of the peremptory challenges allowed
him by law.

We do not mean to say, by any means, that if a juror give
a general negative answer to the first question, it is the privi-
lege of the accused, then, to inquire whether or not he has
formed and expressed an opinion from hearsay.

The statute has prescribed the question intended further
to test his competency.

But we do say, that a juror, when asked the first question,
voluntarily avows an opinion formed, fixed and expressed,
discloses one of those states of the mind, the existence of
which the second and third statutory questions were intended
to inquire after, and upon the entertainment of which, the
statute requires " *he shall be set aside for cause.*"    We do
say, any juror who declares first, " that he has a fixed opinion
as to the guilt or innocence of the accused," and then, " that
he has resting on his mind no bias or prejudice for or against
the accused, and that his mind is perfectly impartial between
the State and the accused," evinces a mental or moral obli-

quity, either of which unfits him to be a trior, where truth is sought after as a guide in the administration of justice.

4th. As this case must be re-tried, we shall not express any opinion regarding the conformity of the verdict to the law and the evidence. We may say, however, that it is a very peculiar case. We find in the record no evidence of express malice entertained by the slayer toward the slain, nor yet of any injury done, or provocation given, by the slain toward the slayer. A quarrel had been progressing for hours between other parties, with which it does not appear that either of these had interfered, save to make peace. No act done, no word spoken, by either, would identify him with the one or the other belligerent party; yet just as the latter have proceeded, *within a house,* from words to a conflict with deadly weapons, the accused standing quietly *without the house,* looking in another direction, receives a painful gun shot wound; turning quickly to the direction whence the shot came, he sees the deceased coming out of the house, (the scene of combat) apparently unarmed, and immediately fires upon him, inflicting a mortal wound. Scarcely has the deceased fallen, when the accused receives another fire, distributing sixty shot, quite of a different kind from the first, over half his person, and falls wounded, but not mortally. Yet, no part of the evidence discloses from whom or wherefore the accused received either fire. It is very certain, that deceased did not deliver the last, though it is quite probable he may have delivered the first. I believe there is no dispute as to any fact to which I have adverted; at all events, we so understood the evidence. We are strongly impressed, that there are important facts, (probably susceptible of proof,) part of the *res gestæ,* not yet developed. Whether they ever will come to light, and if so, what influence they may exert upon the prisoner's fate, hangs in doubt, but the impression stated, carries our mind irresistibly back to the question of continuance, and we are constrained to exercise our legal discretion by remanding this case for another trial.

Let the judgment be reversed.