32057. McCORQUODALE v. STYNCHCOMBE et al.

UNDERCOFLER, Presiding Justice.

McCorquodale appeals from the denial of his habeas corpus petition and motion for stay of execution in Fulton Superior Court on November 15, 1976. This court granted review on January 15, 1977.

This is the second appearance of this case in this court. Appellant attacked, on direct appeal, his conviction for murder and sentence of death. This court affirmed the conviction and sentence in *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974). The U. S. Supreme Court denied certiorari on July 6, 1976. McCorquodale v. Georgia, 428 U. S. 910 (49 LE2d 1218) (1976).

Following remittitur by this court, the trial court, on October 22, 1976, set an execution date of November 10, 1976, and denied an oral motion for the appointment of a psychiatrist to examine appellant who it was alleged,

without proof being offered, had become insane following conviction. On October 27, 1976, under the provisions of Code Ann. § 27-2602, appellant's counsel wrote a letter to the Governor requesting a psychiatric examination for appellant which the Governor denied on the grounds that the requirements of the statute as to evidence raising reasonable grounds to believe the appellant was insane had not been met. On October 28, 1976, the petition for writ of habeas corpus and motion for stay of execution was filed in the trial court. On November 4 and 5, 1976, a hearing was held on the writ and motion. During this hearing, after lengthy argument on the stay motion, an oral motion for continuance was made and denied; however, a stay of execution was ordered. On November 15, 1976, the trial court denied the writ, denied further stay of execution and set December 3, 1976, as the date of execution. On November 29, 1976, the court, on hearing and argument of counsel on a motion for new trial considered by the trial court as a motion to reconsider its order of November 15th, permitted the filing of a report from the staff physician at Reidsville who, pursuant to an order from the Governor, examined appellant upon his transfer to that institution and thereafter denied the motion. This report stated there were no grounds for believing McCorquodale was insane. On November 30, 1976, the court granted supersedeas pending appeal.

Appellant enumerates four errors. We affirm.

1. Appellant argues that denial of his oral motion for continuance during the habeas hearing on November 4 was error as an abuse of the judge's discretion under Code Ann. § 81-1419; a violation of the basic purposes of the Georgia Habeas Corpus Act of 1967, as amended; and violated his constitutional rights to due process and effective assistance of counsel under the Sixth and Fourteenth Amendments to the U. S. Constitution and Art. I, Sec. I, Pars. I and XI of the 1976 Georgia Constitution. Code Ann. §§ 2-101, 2-111.

(a) "All applications for continuances are addressed to the sound discretion of the court, and, if not expressly provided for, shall be granted or refused as the ends of justice may require. . ." Code Ann. § 81-1419. This discretion will not be interfered with by the appellate

courts unless it clearly appears that the judge abused his discretion. *Campbell v. State,* 231 Ga. 69 (200 SE2d 690) (1973).

The record and transcripts here show appellant filed his writ on October 26, 1976, to forestall execution set for November 10, 1976. The remarks of leading counsel for appellant show the trial judge selected a date for the hearing on the writ and motion to stay which was concurred in by leading counsel. He also stated to the court that no evidentiary hearing was contemplated. The hearing was held pursuant to this concurrence seven days after the writ was filed which was not unreasonable under the circumstances. See *Foster v. State,* 213 Ga. 601, 602 (1) (100 SE2d 426) (1957). After the case was called and lengthy argument for a stay of execution, counsel for appellant made oral motion for a continuance stating that the Governor's failure to grant his request for appointment of a psychiatrist to determine whether or not appellant was now insane had changed the "complexity" of the case and evidentiary hearings were therefore required to examine into all of the allegations presented to the court in the writ as well as into contentions 24 and 25 relating to post-conviction insanity allegations.

There was no abuse of discretion. These facts are clearly distinguishable from those argued by counsel, i.e., *Ryder v. State,* 100 Ga. 528 (28 SE 246) (1897) and *Maddox v. State,* 32 Ga. 581 (1861). Nor was the denial a foreclosure of opportunity by counsel to prepare adequately for trial as cited in *Hardwick v. Gooding,* 233 Ga. 322 (210 SE2d 794) (1974). Appellant here was represented by nine attorneys, most of whom have been actively engaged in preparation of appellant's legal defenses from the time of the filing of the application for certiorari to the U. S. Supreme Court in the main case until the present date. Many of them have been actively engaged in defense litigation involving the death penalty. If counsel had seriously intended to present oral testimony and empirical data at the habeas hearing, he could have so advised the court prior to the setting of the date for the hearing on the writ and stay of execution.

Refusal of continuance based solely on alleged lack of opportunity of leading counsel to prepare for trial was not

an abuse of discretion, nothing being shown as to inability or lack of opportunity of other attorneys in the case to prepare for such trial. *Alred v. Celanese Corp. of America,* 205 Ga. 499 (2) (54 SE2d 225) (1949). And see *Dawson v. Smith,* 150 Ga. 352 (1) (103 SE 847) (1920).

(b) The Georgia Habeas Corpus Act of 1967, as amended, expanded the scope of state habeas corpus and modified the state doctrine of waiver of rights. Ga. L. 1967, Sec. 1, p. 835. The Act further gave the superior courts exclusive jurisdiction to try such cases because of "many sharply contested issues of a factual nature." Appellant argues the habeas court should have been "flexible" under that Act and permitted a full evidentiary hearing. He alleges the hearing was "accelerated," permitting him insufficient time for preparation and that the failure of the state to file defensive pleadings prior to the hearing date severely handicapped him. Under the facts set out in sub-section 1 (a) ante, there is no merit to these contentions.

(c) A careful review of the record and transcripts shows no denial of due process under the Fourteenth Amendment of the U. S. Constitution or under Art. I, Sec. I, Par. I of the 1976 Georgia Constitution (Code Ann. § 2-101).

The trial judge who conducted the original trial of appellant also presided at the habeas hearing. He was thoroughly familiar with the issues raised. The record and transcripts of the hearings show he gave thorough and searching attention to each issue raised by appellant. He distinguished those issues which were previously considered and decided on the main appeal. He carefully considered and rejected new claims presented.

(d) Appellant argues he was denied effective assistance of counsel because the habeas court denied his motion for continuance. A review of this record and transcripts shows no ground to support this claim. "This Court has repeatedly held that the constitutional right to effective assistance of counsel does not apply to a habeas corpus proceeding, which is not a criminal case." *Smith v. Ault,* 230 Ga. 433, 434 (7) (197 SE2d 348) (1973); *Wayman v. Caldwell,* 229 Ga. 2 (189 SE2d 74) (1972). But, here, appellant *was* represented by competent counsel, and the

challenge is directed to the *ability* of that counsel to represent appellant effectively where a continuance to bring into court out-of-state witnesses was denied him. We do not think this record shows the habeas court was unreasonable in denying the motion and we find that the court below did not apply technical rules of pleading to restrain appellant's counsel, but sought to explore thoroughly every legitimate issue before the court upon which counsel for appellant was prepared to present legal argument or evidentiary testimony when the case was called. See *McAuliffe v. Rutledge,* 231 Ga. 1, 3 (200 SE2d 100) (1973).

2. Appellant's second enumeration of error contends that the *result* of the habeas court's decision to deny continuance, under the circumstances of this case, was to deny an adequate hearing where substantial state and federal constitutional questions were raised in paragraphs 10 through 25 in his habeas petition. A review of the habeas corpus petition shows that those set forth in paragraphs 10, 11, 12, 13, 14, and 15 were enumerated as errors 21 and 22 in the assignment of errors on direct appeal. Also, paragraphs 16, 17 and 18 were considered on direct appeal as errors 25 and 26; paragraph 19 was addressed in errors 4, 7, 8 and 16 on direct appeal; paragraph 20 was addressed in errors 18, 19, and 20; paragraph 21 was addressed in error 4, and paragraph 23 was addressed in error 7.

Paragraph 22 raised an issue not presented during the main appeal, namely, that the trial court's instruction to the jury that "the law presumes" certain mental states as elements in the offense of murder "which presumption may be rebutted" was burden-shifting, depriving appellant of the right against conviction except upon proof beyond a reasonable doubt.

A review of the charge of the court attacked here by appellant during the innocence-guilt phase of the main trial shows the court charged in pertinent part,". . . [T]he law presumes that a person intends to accomplish the natural and probable consequences of his acts, and if a person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily employed to produce death and thereby causes

the death of a human being, the law presumes the intent to kill. This presumption may be rebutted. . ." The two charges relating to presumptions are not burden-shifting and under the facts of this case where insanity was not at issue are not error. *Nunnally v. State,* 235 Ga. 693, 703 (6) (221 SE2d 547) (1975); *Moon v. State,* 68 Ga. 687 (7) (1881); *Barbee v. State,* 175 Ga. 307 (165 SE 232) (1932); *Plummer v. State,* 200 Ga. 641 (1) (38 SE2d 411) (1946); *Carrigan v. State,* 206 Ga. 707 (58 SE2d 407) (1950); *Fisher v. State,* 228 Ga. 100 (2) (184 SE2d 156) (1971).

Finally, paragraphs 24 and 25 raise the new issues relating to post-conviction insanity which the habeas court thoroughly reviewed, considered and denied. We review that denial in Division 3, infra. We find no error in the second enumeration.

3. In the third enumeration of error, appellant challenges the constitutional fairness of the process for determining post-conviction insanity and asserts that such procedures discriminate against indigent defendants. The procedures complained of are set out in Code Ann. §§ 27-2601, 27-2602.

Code Ann. § 27-2601 states: "No person who has been convicted of a capital offense shall be entitled to any inquisition or trial to determine his sanity." This statute is not violative of due process standards under the State and Federal Constitutions. See *McLendon v. Balkcom,* 207 Ga. 100 (1) (60 SE2d 753) (1950), ". . . and an attack cannot be sustained upon the section as being invalid because it deprives [one] of due process of law." Solesbee v. Balkcom, 339 U. S. 9 (70 SC 457, 94 LE 604) (1950) affirming *Solesbee v. Balkcom,* 205 Ga. 122 (52 SE2d 433) (1949). See also *Solesbee v. Balkcom,* 208 Ga. 121 (65 SE2d 263) (1951).

Appellant's principal attack is upon § 27-2602 prescribing procedures which the Governor, in his discretion, may apply upon receiving "satisfactory evidence . . . showing reasonable grounds to believe that a person convicted of a capital offense has become insane subsequent to his conviction" to have the person examined.

Appellant argues these procedures are constitutionally arbitrary "and fundamentally unfair and that they deny him, solely because of his indigency, an

opportunity available to others with more financial resources to obtain psychiatric assistance to determine if he is, in fact, insane."

The habeas court ruled the due process question had been previously decided by the U. S. Supreme Court in Solesbee v. Balkcom, supra. We agree. We find also that Morrissey v. Brewer, 408 U. S. 471 (92 SC 2593, 33 LE2d 484) (1971); Wolff v. McDonnell, 418 U. S. 539 (94 SC 2963, 41 LE2d 935) (1974); and Goss v. Lopez, 419 U. S. 565 (95 SC 729, 42 LE2d 725) (1975), offered in argument by appellant, are clearly distinguishable from Solesbee and do not represent such a departure from that decision as to make it inapplicable under the facts of this appeal.

The language of § 27-2602 has been the law of this state since 1903 (Ga. L. 1903, p. 77). It imposes no duty upon the Governor to act, but recognizes the "universal common-law principle that upon a suggestion of insanity after sentence, the tribunal charged with responsibility must be vested with broad discretion in deciding whether evidence shall be heard." Solesbee, supra, p. 13.

The cases cited by appellant (Griffin v. Illinois, 351 U. S. 12 (1956) and others) to support his argument that the Georgia statutory scheme for determining post-conviction insanity denies him due process because it denies him relief solely on the grounds that he is indigent are inapplicable here. Prior to the main trial, the court provided him with access to psychiatric evaluation unlimited as to costs or scope to determine his fitness for trial.

Although the Governor's action with regard to appellant's claim of post-conviction insanity is not subject to judicial review the record here discloses appellant's counsel, by letter and unsupported by affidavits or other evidence from anyone, made a suggestion of insanity. The Governor concluded on the basis of this showing that there was insufficient evidence to invoke his power to have appellant examined to determine whether he was insane. However, the Governor's letter responding to appellant's request stated further, ". . . It is my understanding that Mr. McCorquodale has not been received at Georgia State Prison. When he has been received, he will be examined by the staff physician. Should there be any reason to suspect

that Mr. McCorquodale is not sane, I will be notified. I will also consider any information that you may have regarding Mr. McCorquodale's sanity." Appellant offered no further proof of insanity. Subsequent to the Governor's reply to appellant's counsel, the Governor's counsel wrote to the Commissioner of Corrections and Rehabilitation, stating in pertinent part, ". . . The Governor has indicated to me that he will grant the psychiatric evaluation provided for in Georgia Code Section 27-2602 if there is any reason to believe that it is appropriate." The record here shows further Mr. McCorquodale was examined upon being received at Reidsville, and that evaluation, introduced into this record on November 29, concluded there were no grounds to consider him insane.

4. Appellant again raises the issue passed upon on direct appeal that the exclusion for cause of 17 veniremen because they had expressed attitudes against prescribing the death penalty under any circumstances was error, stating the examination given on voir dire did not meet Witherspoon standards; such exclusion at the guilt phase of the trial was error; and precluded appellant's right to a representative jury. We decided this issue adversely to appellant on the main appeal. See *Krist v. Caldwell*, 230 Ga. 536 (198 SE2d 161) (1973). However, appellant states the recent case of Davis v. Georgia, — U. S. — (97 SC 399, 50 LE2d 339) requires a re-evaluation of our previous decision.

' We have carefully reviewed Davis in the light of Witherspoon v. Illinois, 391 U. S. 510 (1968) applying the exact point made by appellant which was considered in Bumper v. North Carolina, 391 U. S. 542 (1968) and find that the veniremen here discharged for cause were "irrevocably committed, before the trial [had] begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." Witherspoon, supra, at p. 522, n. 21. The original transcript of voir dire in the main case shows the veniremen were asked the specific questions established in Witherspoon as a test to determine such "irrevocable commitment" and the questions presented and the reactions of the jurors in response to those questions was clear and unambiguous. We find no error.

*Judgment affirmed. All the Justices concur.*

ARGUED MARCH 15, 1977 — DECIDED MAY 12, 1977 —
REHEARING DENIED JUNE 7, 1977.

*John R. Myer, Robert L. Ridley, Jack Greenberg, James M. Nabrit, III, Lynn Walker, David E. Kendall, Peggy C. Davis, Linda Greene, Anthony G. Amsterdam,* for appellant.

*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney,* for appellees.