## S96A0538. DAVIS v. THOMAS.
(471 SE2d 202)

THOMPSON, Justice.

We granted an application for interlocutory review filed by petitioner Troy Anthony Davis in this capital habeas corpus proceeding, and posed the following question:

> Whether the habeas court abused its discretion in denying the habeas petitioner's motion for a continuance of the evidentiary hearing in this matter, and, if so, whether such discretionary abuse is likely to result in substantial error at the evidentiary hearing.

Petitioner was convicted by a jury and sentenced to death for the murder of a police officer.[1] This Court affirmed the conviction and sentence in *Davis v. State,* 263 Ga. 5 (426 SE2d 844) (1993). Thereafter, petitioner's trial counsel withdrew, and the Georgia Appellate Practice and Educational Resource Center, Inc. ("Resource Center")

---

[1] He was also convicted of obstruction of a law enforcement officer, aggravated assault (two counts) and possession of a firearm during the commission of a felony.

undertook his representation and began a search for volunteer counsel.[2]

In March 1994, the Butts County Superior Court signed petitioner's execution warrant. Having been unsuccessful in its attempts to secure volunteer counsel, Resource Center staff attorney Jeffery Ertel filed a skeletal petition for writ of habeas corpus and motion for stay of execution on petitioner's behalf. The stay was granted on March 15, 1994. In April 1995, the habeas corpus proceeding was assigned to a judge, and a status hearing was conducted on July 20, 1995. At that hearing Mr. Ertel informed the court that efforts to secure volunteer pro bono counsel for petitioner had been unsuccessful. The court responded that Mr. Ertel would remain responsible for petitioner's representation unless replaced by substitute counsel; and an evidentiary hearing was scheduled for November 21, 1995.

On August 28, 1995, the executive director of the Resource Center filed a notice of withdrawal of Mr. Ertel as named counsel, and a motion for continuance of the November 21, 1995 hearing, or alternatively for withdrawal of the Resource Center as counsel of record. As grounds for the motion, it was shown that the Resource Center had lost all of its federal funding (seventy percent of its operating budget) because Congress had not appropriated funds for the twenty-one death penalty resource centers nationwide for fiscal year 1996; attorney Ertel had notified the executive director in early August that due to the funding crisis he was forced to obtain employment elsewhere and is precluded from working on Resource Center cases; and that six of the Resource Center's eight attorneys were either forced to resign or were discharged due to lack of funds, leaving a staff of two attorneys, an investigator, an administrative assistant, and a caseload consisting of eighty death-row inmates. The State opposed the motion for continuance.

One of the remaining Resource Center attorneys filed a supplemental motion for continuance explaining that "this drastic measure was necessary" due to attorney Ertel's unavoidable and unanticipated departure, the similar loss of the investigator assigned to this matter, and because undersigned counsel had no previous contact with petitioner's case and could not ethically and competently represent him at the November 21 hearing. A continuance was requested until March to allow the present staff to become familiar with the record

---

[2] The Resource Center was established in 1988 through joint efforts of the Supreme Court of Georgia, the State Bar of Georgia, the Georgia Attorney General, and the state and federal judiciaries to provide expert assistance to attorneys who volunteer to represent indigent, death-sentenced inmates in post-conviction proceedings. It subsequently expanded its staff enabling it to provide direct representation to death row inmates.

and attempt to secure volunteer counsel.[3]

On October 19, 1995, the habeas court entered an order denying the request for a continuance and requiring that the hearing commence as scheduled on November 21, 1995. Because the Resource Center's previous efforts to secure counsel had been unsuccessful, the court did not believe granting a continuance "will guarantee" that volunteer counsel will be found. A certificate of immediate review was issued and this Court granted petitioner's application for interlocutory appeal from that order.

The habeas court based its ruling on the prior inability and present unlikelihood of securing volunteer counsel. We acknowledge that the constitutional right to effective assistance of counsel does not apply in habeas corpus proceedings. *McCorquodale v. Stynchcombe,* 239 Ga. 138 (1) (d) (236 SE2d 486) (1977). Neither is there a right to appointment of counsel in a habeas corpus proceeding. *Stephens v. Balkcom,* 245 Ga. 492 (3) (265 SE2d 596) (1980). But the gravamen of petitioner's argument was that he *was* represented by counsel, that he relied on this representation, and the request for continuance was made to enable substitute counsel to adequately inquire into and present his constitutional claims.

Attorney Ertel's announced departure in early August left the remaining staff with less than two months to familiarize themselves with a complex record, and to present the necessary evidence to competently support petitioner's constitutional claims. The loss of funding and consequent diminution in staff occurred at a critical time in the habeas proceedings, and was not the result of any action or inaction on the part of the Resource Center. Given these unique and dire circumstances, we agree that the Resource Center simply could not provide adequate representation without a continuance. Rather than prejudice the state, a continuance would advance its interests in ensuring that the habeas proceeding is litigated thoroughly and competently in the first place. The interests of justice require that the Resource Center be given a realistic opportunity to adequately prepare for the hearing. Accordingly, we are constrained to hold that under the highly unusual facts of this case the habeas court abused its dis-

---

[3] The plight of the Resource Center was further explained in its motion:
The Resource Center cannot complete the necessary review of files and investigation to file an Amendment to the [habeas corpus] Petition by November 2, nor adequately prepare for and conduct an evidentiary hearing on November 21. Neither of the two attorneys remaining at the Resource Center have had any involvement in Mr. Davis' case. Both undersigned counsel and [the remaining investigator] maintained a full case-load at the time funding was cut and other employees left the office. Thus, both attorneys have had to assume responsibility for the cases of six other attorneys, in addition to their own cases. The same is true of the only investigator . . . .

cretion in denying the requested relief and that such abuse is likely to result in substantial error at the evidentiary hearing. See generally *Hardwick v. Gooding*, 233 Ga. 322 (210 SE2d 794) (1974); *Johnson v. Caldwell*, 229 Ga. 548 (192 SE2d 900) (1972).

We recognize that the habeas court has broad discretion in controlling its calendar and further that the court is bound by statutory mandates with respect to disposition of first-time filed death penalty habeas corpus petitions.[4] We reiterate that our ruling today is limited to the peculiar facts of this case, and we admonish counsel who undertake representation in these matters that the trial court is vested with wide discretion in managing its court calendar, and that unpreparedness or the lack of due diligence alone will not suffice to require the granting of a continuance.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., and Sears, J., who concur specially, and Hunstein, Carley and Hines, JJ., who dissent.*

FLETCHER, Presiding Justice, concurring specially.

I agree with the majority's holding that under the peculiar facts of this case, the habeas court abused its discretion in denying appointed counsel's motion for continuance.

This case, however, does not present an opportunity to reconsider this Court's prior holding that Georgia law does not provide a right to appointment of counsel in a death penalty habeas proceeding.[5] Despite the absence of an absolute *right* to counsel in such cases, I am persuaded that appointment of competent counsel for an indigent death row inmate's first habeas challenge is an integral part of ensuring the fundamental fairness of the state's death penalty procedures and that appointed competent counsel should rarely, if ever, be denied. The Georgia Constitution guarantees the right to seek habeas relief.[6] Without competent counsel, this is an empty right for a death row inmate who lacks access to legal materials and effective investigation and often lacks the training to understand the complex jurisprudence of the death penalty. Additionally, without competent counsel, an indigent inmate will find the newly enacted time restraints on

---

[4] See Death Penalty Habeas Corpus Reform Act of 1995, OCGA § 9-14-44 et seq. (Ga. L. 1995, p. 381); and in response thereto, Uniform Superior Court Rule 44 (the primary purpose of which is to avoid unnecessary delay and guarantee the expeditious progress of capital habeas corpus cases through state courts).

[5] See *State v. Davis*, 246 Ga. 200 (269 SE2d 461) (1980), cert. denied, 449 U. S. 1057 (101 SC 631, 66 LE2d 511) (1980); see also *Murray v. Giarratano*, 492 U. S. 1, 10 (109 SC 2765, 106 LE2d 1) (1989) (neither Eighth Amendment nor due process requires states to appoint counsel for indigent death row inmates seeking state post-conviction relief).

[6] Ga. Const., Art. I, Sec. I, Par. XV.

state habeas actions impossible to meet.[7]

In the two decades following *Gregg v. Georgia*,[8] this state and many others have made active use of the availability of the death penalty. Yet, the state and federal courts continue to struggle with the complex issues arising in these cases in both the direct appeal and the habeas corpus context. Therefore, it is inconceivable that anyone continues to believe that competent counsel is not necessary "to assure a fair and meaningful habeas corpus hearing" in a death penalty case.

The stated legislative intent of Georgia's Habeas Corpus Act was to expand the scope of state habeas corpus in order to strengthen "state courts as instruments for the vindication of constitutional rights."[9] Anything that tends to defeat this legislative intent is a step in the wrong direction. The federal courts have recognized the soundness of the statutory structure.[10] It rightfully retains initial responsibility where it belongs by allowing state courts to fully develop the evidentiary facts. A full and fair state evidentiary hearing will speed subsequent federal habeas review by dispensing with the necessity of an additional evidentiary hearing. This aids the state's goal of a more efficient process. I cannot agree with the dissent's rigid and technical approach, as it will only impede that goal.

I am authorized to state that Justice Sears joins in this special concurrence.

HUNSTEIN, Justice, dissenting.

I respectfully dissent to the majority's opinion reversing the trial court's ruling denying Davis a four-month continuance. The record reveals that the Resource Center sought a continuance on behalf of Davis of the November 1995 evidentiary hearing scheduled by the trial court. The Resource Center contended that its attorney who had originally represented Davis left as a result of lack of funding and the continuance was necessary to enable new counsel to become familiar with the record in Davis' case. The continuance sought by Davis was until March 1996. The majority contends that under a ruling "limited to the peculiar facts of this case," the denial of the continuance was an abuse of the trial court's discretion. However, looking to those peculiar facts, it is apparent that Davis, through this Court's grant of his application for interlocutory review, has in effect obtained a continuance of the evidentiary hearing for a period far exceeding the original four-month period originally requested. Furthermore, Davis

[7] See Uniform Superior Court Rule 44.
[8] 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976).
[9] OCGA § 9-14-40.
[10] *Peters v. Rutledge*, 397 F2d 731, 737 (5th Cir. 1968).

has not demonstrated any efforts to expedite the appeal, preparation of the record, etc., and has not shown, on this record, adverse collateral consequences. See *Baker v. State*, 240 Ga. 431 (241 SE2d 187) (1978). Aside from the fact that the majority's opinion is expressly limited to the peculiar facts raised here, there is no reason to conclude that the question raised by Davis is one which can never be decided because it inevitably becomes moot prior to an appeal. See id. Accordingly, because the issue for which Davis' application was granted has been rendered moot, I would dismiss this appeal. OCGA § 5-6-48 (b) (3).

CARLEY, Justice, dissenting.

On August 18, 1989, Troy Anthony Davis struck another man with a pistol and a law enforcement officer responded to the disturbance. Davis fled and, when the officer ordered him to stop, Davis turned and shot the officer. "Davis, smiling, walked up to the stricken officer and shot him several more times. The officer's gun was still in his holster." *Davis v. State*, 263 Ga. 5, 6 (1) (426 SE2d 844) (1993). According to Davis, "he went to the officer and 'finished the job' because he knew the officer got a good look at his face when he shot him the first time." *Davis v. State*, supra at 6 (1). A jury trial resulted in Davis' conviction for murder and in the imposition of a death sentence. After an exhaustive appeal, Davis' conviction and death sentence were affirmed unanimously by this Court and certiorari was denied by the Supreme Court of the United States. *Davis v. State*, supra, cert. denied, ____ U. S. ____ (114 SC 396, 126 LE2d 344) (1993). Thereafter, in March 1994, the Georgia Appellate Practice and Educational Resource Center, Inc. (Resource Center) filed a skeletal habeas corpus petition on behalf of Davis. The Resource Center, having been unable to obtain volunteer counsel to represent Davis in the habeas proceeding, afforded him the services of one of its own attorneys and a hearing eventually was set for November 1995. When, however, the Resource Center lost its federal funding in August 1995, the attorney who had been representing Davis sought employment elsewhere and, as the result, a four-month continuance of the habeas proceeding was sought. The habeas court denied the motion for a continuance, but certified its order for immediate review. We granted Davis' application for interlocutory appeal and a majority of this Court now reverses the denial of his motion for a continuance. I must respectfully but vigorously dissent.

The filing of a petition for a writ of habeas corpus does not institute a criminal proceeding and, although Davis certainly can retain counsel or represent himself pro se, neither the federal nor state constitution requires the appointment of counsel to represent him. *Coleman v. Thompson*, 501 U. S. 722, 755 (V) (B) (111 SC 2546, 115 LE2d

640) (1991); *Murray v. Giarratano*, 492 U. S. 1 (109 SC 2765, 106 LE2d 1) (1989); *Woodson v. Jarvis*, 261 Ga. 557 (408 SE2d 414) (1991); *Grace v. Caldwell*, 231 Ga. 407, 408 (3) (202 SE2d 49) (1973). It is because there is no federal or state right to appointed counsel in a habeas proceeding that there can be no subsequent claim of ineffective assistance of habeas counsel. *Stephens v. Balkcom*, 245 Ga. 492 (3) (265 SE2d 596) (1980); *McClure v. Hopper*, 234 Ga. 45, 48 (3) (214 SE2d 503) (1975); *Smith v. Ault*, 230 Ga. 433, 434 (7) (197 SE2d 348) (1973). The majority acknowledges these well-established principles, but nevertheless holds that it was error to deny Davis' motion for a continuance of his habeas proceeding simply because he has been represented by counsel previously. However, the fallacy in the majority's premise is glaringly apparent. Davis' previous legal representation was afforded by counsel provided by the publicly-funded Resource Center, rather than by privately-retained counsel. Compare *McCorquodale v. Stynchcombe*, 239 Ga. 138, 141 (1) (d) (236 SE2d 486) (1977); *Hardwick v. Gooding*, 233 Ga. 322 (210 SE2d 794) (1974); *Johnson v. Caldwell*, 229 Ga. 548 (192 SE2d 900) (1972). That previous legal representation by the publicly-funded Resource Center is more than Davis was constitutionally entitled to receive and he certainly has no right to continue to receive that gratuitous representation. Accordingly, the Resource Center's loss of funding and the consequent impact upon Davis' legal representation places him in no worse position than he would occupy had the Resource Center never undertaken his representation. Indeed, the habeas court did not hold that Davis will not be entitled to continue to receive legal representation from the Resource Center in the habeas proceeding. It merely held that the hearing on Davis' petition is not to be delayed because of the Resource Center's loss of funding. It has long been recognized that appointed counsel is not necessary "so as to assure a fair and meaningful habeas corpus hearing." *O'Neal v. Caldwell*, 231 Ga. 608 (203 SE2d 191) (1974). It should, therefore, follow that the grant of a continuance so as to facilitate the Resource Center's continuing legal representation of Davis is not necessary in order to assure a fair and meaningful habeas corpus hearing. By holding otherwise, the majority has, in effect, transformed that which was always intended to be, and which should remain, a mere gratuity into yet another "right" for convicted criminals. In determining whether it was reversible error to deny Davis' motion for a continuance, his previous legal representation by the Resource Center is not even a relevant factor to be considered and certainly cannot constitute the sole premise upon which to base a reversal of the trial court's ruling.

The denial of a motion for a continuance in a civil case is a discretionary ruling which should not be reversed on appeal in the absence of a clear abuse by the trial court. *McCorquodale v. Stynch-*

*combe,* supra at 139 (1) (a). Here, the habeas court was authorized to find the following: Davis had already been afforded a thorough and comprehensive appeal. In the more than a year in which the Resource Center had provided Davis with post-appeal legal representation, it had failed, despite its then-uncut level of funding, to find volunteer counsel to represent him and had not filed on his behalf anything more than a skeletal habeas petition. The expertise of the Resource Center is in the death-penalty area and there is nothing to indicate that the year-long failure to find volunteer counsel or to file anything more than a skeletal habeas petition was not the result of the absence of any meritorious ground for obtaining habeas relief. Compare *Hardwick v. Gooding,* supra (delay attributed to State); *Johnson v. Caldwell,* supra (warden entitled to continuance, not on basis of delay, but to meet ground raised by petitioner pro se at habeas hearing). Despite the Resource Center's long-standing representation of Davis and its expertise in the death-penalty area, it moved for a four-month continuance a full two months before the scheduled hearing on the habeas petition. Under these circumstances, it is my opinion that the trial court, in the exercise of its discretion, was authorized to find that the Resource Center had been afforded adequate time to prepare Davis' case and that, if the Resource Center was not prepared, it was due to the failure to have exercised sufficient diligence during the time that had been afforded. See *Hanson v. Kent,* 263 Ga. 124 (1) (428 SE2d 785) (1993); *McCorquodale v. Stynchcombe,* supra at 139 (1) (a), 141 (1) (d).

It has been recognized by no less an authority than the Supreme Court of the United States that "habeas corpus review may give litigants incentives to withhold claims for manipulative purposes and may establish disincentives to present claims when evidence is fresh. [Cits.]" *McCleskey v. Zant,* 499 U. S. 467, 491-492 (III) (111 SC 1454, 113 LE2d 517) (1991). To prevent such unauthorized abuse of the writ, the General Assembly enacted legislation which was designed to prevent the writ of habeas corpus from being used in death-penalty cases

> solely as a delaying tactic under the guise of asserting rights, seeking remedies, or raising objections and challenges to . . . convictions and sentences that should have been raised or asserted in the unified appeal procedure and the automatic direct appeal available under state law . . . [and to] prevent the waste of limited resources and . . . eliminate unnecessary delays in carrying out valid death sentences imposed in accordance with law.

Ga. L. 1995, pp. 381-382, § 2. See also Uniform Superior Court Rule

44 (providing for the expeditious resolution of a habeas proceeding initiated by a death-penalty defendant). I find the majority opinion to be in fundamental conflict with this public policy. Although purporting to limit its holding "to the peculiar facts of this case," I think it clear that the ultimate effect of today's majority opinion will be to thwart the expeditious imposition of the death penalty in this state. Nothing in that opinion precludes the Resource Center from relying upon its level of funding as the ground for seeking and obtaining a continuance in each and every capital habeas case with which it is connected, notwithstanding the petitioner's lack of any right to appointed legal representation, and in spite of the Resource Center's lack of diligence in its prior legal representation of the petitioner. Upon an expeditious determination that there is no constitutional impediment to the imposition of the death penalty in accordance with the verdict of the jury, Davis should be made to suffer that penalty for his wanton murder of a police officer over six and one-half years ago. Finding no reason in law or logic why the level of the Resource Center's funding should be a ground for bringing to a standstill the progress of this or any other death-penalty habeas case in this state, I would affirm the trial court's denial of Davis' motion for a continuance and must dissent to the majority's contrary holding.[11]

I am authorized to state that Justice Hines joins in this dissent.

DECIDED MAY 28, 1996 —
RECONSIDERATION DENIED JUNE 28, 1996.

---

[11] I am compelled to deviate from my usual avoidance of footnotes so as to make the following observations: Not only has it been more than six and one-half years since Davis murdered the police officer, it has been more than three years since this Court unanimously affirmed his conviction and sentence. Despite the passage of those more than three years, Davis' state habeas proceeding has yet to be heard. The effect of today's majority opinion is to delay further the resolution of that proceeding. However, even if the majority correctly affirmed the habeas court's denial of Davis' motion for a continuance, his actual execution in fulfillment of the jury's sentence is hardly imminent. If the habeas court eventually denies Davis' petition, he can apply for a certificate of probable cause from this Court. If a certificate of probable cause is denied, he can seek a writ of certiorari from the Supreme Court of the United States. If a writ of certiorari is denied, Davis can initiate a federal habeas proceeding and, if unsuccessful, he can pursue further proceedings in the Eleventh Circuit and then in the Supreme Court of the United States. If Davis still has failed to obtain habeas relief, he can file successive petitions in the state and federal courts and, if unsuccessful, again invoke the jurisdiction of this Court, the Eleventh Circuit and the Supreme Court of the United States. In the context of this seemingly endless and redundant legal process, the delay occasioned by today's majority opinion might seem minuscule. However minuscule the delay might seem, I nevertheless am unable to sanction it, because, in my opinion, no delay whatsoever is authorized and the courts of this state have a public duty to undertake to resolve a post-appeal attack upon the constitutionality of a murder conviction and death sentence as expeditiously as possible.

*Jeffery L. Ertel, M. Elizabeth Wells,* for appellant.

*Michael J. Bowers, Attorney General, Peggy R. Katz, Senior Assistant Attorney General, Paige R. Whitaker, Assistant Attorney General,* for appellee.