S92P1186, S92P1187. DAVIS v. THE STATE (two cases).
(426 SE2d 844)

HUNT, Presiding Justice.

Troy Anthony Davis was convicted by a jury in Chatham County of murder, obstruction of a law enforcement officer, two counts of aggravated assault and possession of a firearm during the commission of a felony. He was sentenced to death for the murder. He appeals. We affirm.[1]

1. At midnight on August 18, 1989, the victim, a police officer, reported for work as a security guard at the Greyhound bus station in Savannah, adjacent to a fast-food restaurant. As the restaurant was

---

[1] The crime occurred on August 19, 1989. The trial began August 19, 1991 and ended August 30. Davis filed a motion for new trial. Soon thereafter, Davis' trial attorneys were appointed to represent him on appeal, while a new attorney was appointed to review the record for effective assistance of counsel. On March 16, 1992, the trial court denied the motion for new trial on all grounds, including the ineffective assistance of counsel claim raised by the new attorney. In Case No. S92P1187, Davis, represented by the new attorney, appeals from the denial of his motion for new trial as to the ineffectiveness claims. In Case No. S92P1186, Davis, represented by trial counsel, appeals from the denial of the motion for new trial on all other grounds. Since the two cases are essentially one appeal from the judgment below, they were consolidated for oral argument on October 13, 1992, and for decision.

closing, a fight broke out in which Davis struck a man with a pistol. The victim, wearing his police uniform — including badge, shoulder patches, gun belt, .38 revolver and nightstick — ran to the scene of the disturbance. Davis fled. When the victim ordered him to halt, Davis turned around and shot the victim. The victim fell to the ground. Davis, smiling, walked up to the stricken officer and shot him several more times. The officer's gun was still in his holster.

The victim wore a bullet-proof vest, but the vest did not cover his sides and the fatal bullet entered the left side of his chest, penetrated his left lung and aorta, and came to rest at the back of his chest cavity. The officer was also shot in the left cheek and the right leg.

The next afternoon, Davis told a friend that he had been involved in an argument at the restaurant the previous evening and struck someone with a gun. He told the friend that when a police officer ran up, Davis shot him and that he went to the officer and "finished the job" because he knew the officer got a good look at his face when he shot him the first time.

After his arrest, Davis told a cellmate a similar story.

2. There is no merit to the defendant's contention that he was not guilty of the felony offense of obstructing a law-enforcement officer "in the lawful discharge of his official duties" (OCGA § 16-10-24 (b)) because the officer was "moonlighting" as a security guard when he was shot. *Loumakis v. State*, 179 Ga. App. 294 (3) (346 SE2d 373) (1986); *Carr v. State*, 176 Ga. App. 113 (1) (335 SE2d 622) (1985).

3. The defendant contends it was error to deny his motion to sever the two aggravated assault counts — one based upon the defendant's attack upon a customer at the restaurant which led to the victim's intervention and death, and the other based on a shooting less than two hours earlier in which the defendant, using the same gun involved in the murder and the other aggravated assault, shot another person with whom he was angry.

A denial of severance is reviewed under an abuse of discretion standard. *Booker v. State*, 231 Ga. 598 (203 SE2d 194) (1974). Offenses may be tried together when they are based on the same conduct or constitute a series of acts connected together (or when they constitute part of a single scheme or plan). *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975).

Here, all the offenses are connected: they occurred the same evening; the same gun was involved; the second assault was the reason the victim tried to arrest the defendant; and there was some evidence that one reason he shot the officer was because he was afraid he had been seen in the area where the first assault had occurred. The denial of severance was not an abuse of discretion. *Stewart v. State*, 239 Ga. 588 (3) (238 SE2d 540) (1977).

4. The evidence supports the conviction on all counts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. Only 20 percent of the prospective jurors were excused for bias or prejudice arising from their knowledge of the case or of people involved in the case. The defendant has shown neither actual prejudice in the jury selection process nor the kind of extensive and inflammatory publicity that mandated a change of venue in our recent case of *Tyree v. State*, 262 Ga. 395 (418 SE2d 16) (1992).[2] There was no error in the denial of the defendant's motion for change of venue.

6. Death-penalty qualification of prospective jurors is not unconstitutional. *Ford v. State*, 257 Ga. 461 (3) (360 SE2d 258) (1987).

7. The trial court did not err by restricting voir dire examination about parole. *Isaacs v. State*, 259 Ga. 717, 732 (24) (386 SE2d 316) (1989).

8. As we held in *Pope v. State*, 256 Ga. 195, 202 (345 SE2d 831) (1986): "Any error regarding a prospective juror qualified 43rd or later on the panel is harmless, unless it becomes necessary to use an alternate juror." Any issue as to the refusal to disqualify prospective juror Daniel is therefore moot.

9. The trial court's determination that jurors Smith and Truitt were qualified to serve as jurors is within the deference due the trial court's findings. *Jefferson v. State*, 256 Ga. 821, 824 (353 SE2d 468) (1987).

10. The jury which convicted Davis and sentenced him to death was comprised of seven blacks and five whites. Although intuitively it might be difficult to discern what a defendant has to complain about when he obtains a majority-black jury in a county that is sixty-four percent white, nevertheless the prosecutor did, as the defendant contends, exercise a disproportionate percentage of his strikes against African-Americans, using eight out of his ten allotted strikes against blacks (eighty percent) in selecting from a venire that was forty-three percent black (eighteen out of forty-two). Therefore, the trial court correctly sought the prosecutor's explanation for his exercise of strikes.[3]

---

[2] A significant factor in our disposition of the *Tyree* case was that the district attorney and various law enforcement officers were largely responsible for much of the inflammatory publicity. This case does not involve the "fanning of flames" by persons who ought to know better.

[3] Especially since the U. S. Supreme Court made it clear in *Georgia v. McCollum*, 505 U. S. ___ (112 SC 2348, 120 LE2d 33) (1992), that defendants have no more right to discriminate racially in the exercise of their peremptory challenges than prosecutors, it is clear that the prosecutor would not be justified in striking disproportionately against one race to counter disproportionate strikes by the defendant against another race. The remedy against defense discrimination would be a *Batson* challenge by the state against the defendant, not race-based peremptories by the prosecutor. It follows, then, that where a prosecutor has disproportionately struck members of one race in the exercise of his peremptories, it is not

In this case, the prosecutor offered the kind of "concrete, tangible, race-neutral and neutrally-applied reasons" that are sufficient to rebut a prima facie case under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). *Ford v. State*, 262 Ga. 558, 560 (423 SE2d 245) (1992).

The prosecutor explained that he struck five of the eight because of their clear reluctance to impose a death sentence. As we have held:

> A prospective juror's conscientious aversion to the imposition of the death sentence is an adequate reason to justify a peremptory strike in a death-penalty case. [Cit.]

*Tharpe v. State*, 262 Ga. 110, 112 (6) (416 SE2d 78) (1992).

Of course, a prosecutor would not be justified in assuming a sentencing bias from the race of a juror any more than the prosecutor could assume a bias against the prosecution generally. *Batson v. Kentucky*, supra, 476 U. S. at 97. However, the answers of these five prospective jurors amply support the prosecutor's suspicions about their willingness to impose a death sentence.[4]

Another juror was struck because he testified the defendant "lived out in the area where some of my relatives live" and because he referred to the defendant by his first name even though he denied knowing him personally. As we said in *Hall v. State*, 261 Ga. 778, 780 (2) (a) (415 SE2d 158) (1991):

> A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike.

The trial court was authorized to conclude that such is the case here. That the juror, whose relatives lived in the same area as the defendant, referred to the defendant by his first name might mean nothing, but the prosecutor's suspicions were not unreasonable.

A seventh juror was struck because he testified he used to work with the defendant's mother and aunt, and he admitted that knowing them would affect his "ability to reach a fair decision in the case." The last juror was struck because the police came to her house to

---

sufficient rebuttal to rely on the composition of the jury as selected. The prosecutor must sufficiently justify his own strikes on neutral grounds, not imply that the defendant's strikes have been non-neutral.

[4] One initially stated she would automatically vote for life. Although she withdrew from that position, she remained adamant that she preferred life and was "not really in favor of" the death penalty. Another testified that "as a Christian" he did not believe he could "choose" a death sentence. The remaining three gave similar answers.

We note that these five jurors represent a relatively small percentage of the total number of black prospective jurors.

arrest her son for burglary and because her daughter "got into a rash of shoplifting" and was receiving psychiatric treatment for her problem. The prosecutor had legitimate, neutral and non-racial reasons to strike these two jurors. Ibid.

The record supports the trial court's determination that the state successfully rebutted the prima facie case.

11. The state is under a duty to reveal any understanding or agreement with a witness concerning criminal charges pending against that witness. *Patillo v. State*, 258 Ga. 255 (4) (368 SE2d 493) (1988); *Jolley v. State*, 254 Ga. 624 (5) (331 SE2d 516) (1985). In this case, there was "no suppression of any understanding or agreement for prosecutorial leniency," *Isaacs v. State*, 259 Ga., supra at 729 (17) and no grounds for reversal.

12. There was no error in the admission of photographs of the victim. *Love v. State*, 259 Ga. 468 (2) (383 SE2d 897) (1989); *Scott v. State*, 250 Ga. 195 (2) (297 SE2d 18) (1982).

13. Our death penalty laws are not unconstitutional for any reason alleged.

14. There was no error in requiring defense mitigation witnesses to testify subject to cross-examination and not allowing the defense merely to introduce in evidence written letters from family members and neighbors. *Green v. Georgia*, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979), does not, as the defendant contends, hold that hearsay evidence must be admitted at the sentencing phase of a death-penalty case. *Isaacs v. State*, 259 Ga., supra at 737 (37).

15. Although at one point in its charge the court referred to finding statutory aggravating circumstances "beyond a reasonable doubt" without mentioning the additional requirement of unanimity, the court's charge contained numerous references to the unanimity requirement. The jury could not have been misled.[5]

16. The jury found two statutory aggravating circumstances:

> (1) The offense of murder was committed against a peace officer while engaged in the performance of his official duties and (2) the murder was outrageously or wantonly vile, horrible or inhuman, in that it involved aggravated battery to the victim prior to the death of the victim.

Record, p. 2717. See OCGA § 17-10-30 (b) (7) and (b) (8). The evidence shows that the victim, wearing his official uniform, in the course of his official duties, ordered the defendant to halt as the latter

---

[5] The state argues that the poll of the jury shows that its verdict was unanimous. We do not decide whether the results of the jury poll could substitute adequately for an omission to charge the unanimity requirement.

10

fled after committing an aggravated assault. Instead of halting, the defendant shot the victim in the face, seriously disfiguring it. He then walked up to the victim as he lay on the ground and inflicted the fatal wound to the chest. The evidence supports the statutory aggravating circumstances found by the jury. OCGA § 17-10-35 (c) (2); see OCGA § 16-5-24 (a); *Davis v. State*, 255 Ga. 588, 593 (3) (c) (340 SE2d 862) (1986).

17. Davis contends his trial counsel was ineffective for failing to object to certain evidence and charges, for not requesting certain jury charges, and for not recalling a witness for additional cross-examination. The record supports the trial court's determination that Davis has shown neither deficient attorney performance nor actual prejudice and, therefore, has failed to show he was denied effective assistance of counsel. *Ferrell v. State*, 261 Ga. 115 (3) (401 SE2d 741) (1991).

18. We do not find that the sentence of death was imposed under the influence of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). The death sentence in this case is neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. Clarke, C. J., Benham, Fletcher, Sears-Collins, JJ., and Judge Ben J. Miller concur; Hunstein, J., not participating.*

APPENDIX.

*Hill v. State*, 250 Ga. 277 (295 SE2d 518) (1982); *Stevens v. State*, 247 Ga. 698 (278 SE2d 398) (1981); *McClesky v. State*, 245 Ga. 108 (263 SE2d 146) (1980); *Collier v. State*, 244 Ga. 553 (261 SE2d 364) (1979); *Willis v. State*, 243 Ga. 185 (253 SE2d 70) (1979); *Ross v. State*, 233 Ga. 361 (211 SE2d 356) (1974).

DECIDED FEBRUARY 26, 1993 —
RECONSIDERATION DENIED MARCH 23, 1993.

*Falligant & Toporek, Robert E. Falligant, Jr., Robert E. Barker,* for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.