S95A0843. HENRY v. THE STATE.
(462 SE2d 737)

HINES, Justice.
Ronald Francis Henry was convicted of malice murder, armed robbery, and kidnapping with bodily injury in connection with the

---

shooting death of Iraj Rouhani. The jury found aggravating circumstances existed and recommended a sentence of life imprisonment without parole as punishment for the murder. See OCGA § 17-10-30.1 (a). Henry was sentenced to life imprisonment without parole for the murder, and to consecutive life sentences for the armed robbery and kidnapping.[1]

Rouhani was fatally shot in the head in a back room of the jewelry store he owned. A shopkeeper in an adjacent store heard gunshots coming from Rouhani's store and testified that a "black male . . . walked out [of the jewelry store]" and was "carrying a bag, a plastic bag." Henry, an African American, was arrested a few minutes later in possession of a .25 calibre pistol and a plastic bag containing jewelry. A videotape from the store's surveillance camera, recovered from a downtown parking deck, depicted Henry pointing a pistol at the victim, striking him in the head, dragging him by the neck into a back room, filling a plastic bag with contents from the display cases, and removing a cassette from the video recorder. Bullets collected from the crime scene were matched to the pistol recovered from Henry. A State's expert witness testified that blood found at the crime scene was Henry's. Expert testimony indicated that the muzzle of the murder weapon was in contact with the victim's head at the time the fatal shot was fired. Henry confessed to the crimes in a taped interview with police.

1. Reviewing the evidence in a light most favorable to the verdicts, the evidence was sufficient to enable a rational trier of fact to find Henry guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Henry asserts that the State's use of peremptory strikes to excuse two African American prospective jurors, Wade and Clark, violated the principles established in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). He maintains that the explanations offered by the State were pretextual. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U. S. 352, 360 (111 SC 1859, 114 LE2d 395) (1991) (plurality opinion).

The State explained that it excused Wade because of her familial relationship to Larry Foster, who had been prosecuted for several offenses, including murder. The State asserted that it struck Clark be-

---

[1] The crimes occurred on May 4, 1993, and Henry was arrested the same day. He was indicted by the April 1993 term of the Athens-Clarke County Grand Jury. On August 17, 1993, the State filed a notice of intent to seek the death penalty. The guilty verdicts were returned on August 24, 1994, and the sentences were filed on August 26, 1994. A motion for new trial was filed on September 22, 1994, amended on November 9, 1994, and denied on November 23, 1994. The notice of appeal was filed December 27, 1994. The case was docketed in this Court on February 27, 1995, and was argued on May 8, 1995.

cause it had prosecuted her son for a felony offense. Prior convictions or arrest histories of a family member are a sufficiently race-neutral reason to exercise a peremptory strike. *Davis v. State,* 263 Ga. 5 (426 SE2d 844) (1993), cert. denied, 510 U. S. ___ (114 SC 396, 126 LE2d 344) (1993). The State also reported that Wade was listed as a State's witness in a case dismissed by the prosecution where Foster was the victim of a shooting. Although Wade failed to disclose any relationship to Foster on her jury questionnaire, the State learned from police that in the shooting investigation Wade identified herself as Foster's cousin. The State's concern that Wade might harbor resentment toward the prosecutor's office because it dismissed the case in which Foster was a shooting victim was neither unreasonable nor racially motivated on its face. "A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike." *Hall v. State,* 261 Ga. 778, 780 (415 SE2d 158) (1991), cert. denied, 505 U. S. 1205 (112 SC 2993, 120 LE2d 870) (1992). The trial court was authorized to find that the explanations offered by the State for the excusal of the two prospective jurors were sufficiently race-neutral under *Batson,* supra. Henry failed to establish that the reasons given by the State were merely pretexts for purposeful racial discrimination. See *Purkett v. Elem,* 514 U. S. ___ (115 SC 1769, 131 LE2d 834) (1995), rehearing denied, 515 U. S. ___ (115 SC 2635, 132 LE2d 874) (1995).

3. (a) Henry alleges that he was denied the right to jury panels drawn from a fair cross-section of the community because students attending the University of Georgia were not adequately represented. "The test for an attack on a traverse jury is two-fold: first, the defendant must prove that the group is a cognizable group; secondly, the defendant must show that the group has been consistently underrepresented." *Potts v. State,* 259 Ga. 812, 813 (388 SE2d 678) (1990). Henry failed in both regards.

Although Henry proffered evidence that college students have a significant impact on the community, he did not establish that college students possess a

> definite composition, . . . a common thread or basic similarity in attitude, ideas, or experience . . . , [or] that there is a community of interest among members of the group such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process.

*Willis v. Zant,* 720 F2d 1212, 1216 (11th Cir. 1983), cert. denied, 467 U. S. 1256 (104 SC 3548, 82 LE2d 851) (1984). See also *Potts,* supra at 813. "[C]ollege students do not qualify as a cognizable group. . . ." *United States v. Fletcher,* 965 F2d 781, 782 (9th Cir. 1992). Henry

also failed to establish an accurate figure representing the number of students attending the University of Georgia who were qualified to serve on a jury, or that such group was consistently underrepresented in the venire due to systematic exclusion by the State. See *Willis*, supra at 1217.

(b) Henry also contends that the trial court erred by denying his request for funds to hire an expert to conduct a demographic study of the student population. However, Henry failed to demonstrate that funds for such an expert were critical to his defense. "The granting or denial of a motion for appointment of expert witnesses lies within the sound discretion of the trial court." (Citation omitted.) *Roseboro v. State*, 258 Ga. 39 (365 SE2d 115) (1988). The trial court did not abuse its discretion.

4. (a) At the time of arrest, Henry was read his *Miranda* rights and asked his name. He responded with profanity. Henry contends that the response constituted an assertion of his right to remain silent, and that subsequent statements he made were therefore inadmissible. The utterance of profanity was not an invocation of the right to remain silent.

(b) The trial court admitted a videotaped statement Henry made to police after his release from the hospital for treatment of a cut sustained during the robbery. After Henry was again read his *Miranda* rights, the following colloquy occurred:

OFFICER: Are you willing to make a statement to police at this time?
HENRY: Yes.
OFFICER: Do you want a lawyer at this time?
HENRY: I might need one. If I need one.
OFFICER: Do you want us to stop talking to you?
HENRY: Oh, not now.
OFFICER: Okay, so you want to talk to us without a lawyer present?
HENRY: Yes.
OFFICER: Do you understand and know what you are doing?
HENRY: Yes.

Henry contends that his response to the initial question regarding his desire for a lawyer was an invocation of his right to counsel, whereupon all interrogation should have ceased. It was not.

In the course of a custodial interrogation a suspect may make an "ambiguous statement or an inartful statement with reference to his desire for an attorney. . . ." (Citations omitted.) *Hall v. State*, 255 Ga. 267, 270 (336 SE2d 812) (1985). Henry's response "I might need one. If I need one," was at best an ambiguous and equivocal state-

ment regarding his desire to assert his right to counsel. See *Hall*, supra (where defendant's custodial statements "I guess I'm going to have to see a lawyer sometime," and "when do you think I'll get to see a lawyer," were found not to be clear invocations of defendant's right to counsel). Where such ambiguous or equivocal references to counsel are made, "law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis v. United States*, 512 U. S. ___ (114 SC 2350, 2356, 129 LE2d 362) (1994).

Once an equivocal request for an attorney is made, " 'further questioning thereafter must be limited to clarifying that request until it is clarified.' " *Hall*, 255 Ga. at 272 (quoting *Thompson v. Wainwright*, 601 F2d 768, 771 (5th Cir. 1979)). See also *Nash v. Estelle*, 597 F2d 513 (5th Cir. 1979). Although the United States Supreme Court has declined to adopt such a rule *requiring* police officers to ask clarifying questions, it has approved of such police practice. *Davis*, 114 SC at 2356. The officer's questioning of Henry conformed to the requirements of *Hall*.

(c) Henry also submits that his videotaped statement was inadmissible because it was obtained in violation of OCGA § 24-3-50. He maintains that police statements made during the interview encouraging him to tell the truth and relating that things were "just going to get worse if you lie," constituted coercion and rendered his statement involuntary. Encouraging a suspect to tell the truth does not constitute hope of benefit so as to render involuntary any statement made thereafter. *Cansler v. State*, 261 Ga. 693 (409 SE2d 504) (1991); *Fowler v. State*, 246 Ga. 256 (271 SE2d 168) (1980).

5. Henry contends that the trial court erred by permitting Hoda Haeri, a friend of the victim, to translate the words of the victim on the videotape of the crimes. The State called Haeri, a native of Iran, to interpret the spoken Farsi audible on the tape. Henry contends that he was denied due process and fundamental fairness by the use of an interested interpreter.

A disinterested interpreter should be used whenever possible to prevent a biased or slanted translation. However, in this instance, Haeri functioned essentially as an expert witness, and her testimony is accurately characterized as opinion. Although not tendered as an expert, she was submitted to voir dire respecting her qualifications and was subject to cross-examination regarding the content of her testimony. Henry was permitted to challenge her competency to interpret Farsi and question her regarding any possible bias, outside the presence of the jury. Haeri testified that she was a citizen of Iran, had a bachelors degree in chemistry, had lived in the United States for 15 years, and that Farsi was her native language. The trial court found Haeri competent to testify and determined that any relationship with the victim would go towards the weight and credibility of her testi-

mony. Accordingly, in charge, the court instructed the jury that it could consider a witness's interest in the case in determining his or her credibility or believability.

During cross-examination, Henry neither attempted to impeach Haeri for bias, nor attacked the accuracy of her translation. Furthermore, Henry was afforded funds to hire his own Farsi translator, who was permitted to listen to the recording himself and compare it to Haeri's translation. Henry cannot now complain that the jury heard only the translation of an interested interpreter where he failed to present evidence of his own translation or rebut the translation offered by the State by establishing any alleged inaccuracies. The record evidences that counsel for Henry was well aware that Dr. Alan Godlas was appointed for that very purpose. Counsel for Henry stated: "For the record, he is our interpreter that the Court had appointed as our expert." "The use of an interpreter, and the extent to which he may be used in the examination of a witness, must necessarily lie within the sound discretion of the trial judge. [Cits.]" *Reed v. State*, 249 Ga. 52, 54 (287 SE2d 205) (1982). The court did not abuse its discretion.

6. Henry challenges the trial court's failure to charge on felony murder, asserting that it should have been charged as a lesser included offense of the malice murder. Henry was not indicted for felony murder. He requested the charge during the charging conference, but failed to reduce it to writing. See Uniform Superior Court Rule 10.3.

Although Henry was indicted on separate counts of armed robbery and kidnapping with bodily injury, the malice murder count did not allege that the murder was committed while engaged in either offense. Felony murder requires proof that the defendant caused the death of another human being while in the commission of a felony. OCGA § 16-5-1 (c). Malice murder requires proof that the defendant caused the death of another human being with malice aforethought. OCGA § 16-5-1 (a). Evidence that Henry's blood was found at the crime scene, that bullets found at the scene were fired from the pistol recovered from Henry, and that the murder weapon was in contact with the victim's head when the fatal shot was fired was sufficient to independently establish malice murder absent evidence necessary to prove armed robbery or kidnapping with bodily injury. Because the offense of felony murder would have required the proof of at least one additional fact beyond that required to establish malice murder, felony murder was not, as a matter of fact, a lesser included offense. OCGA § 16-1-6 (1). See *Stephens v. Hopper*, 241 Ga. 596 (247 SE2d 92) (1978). Even accepting Henry's characterization that felony murder is a lesser included offense,

> [t]he failure to instruct on a lesser included crime is not error, regardless of whether the evidence would have authorized or demanded such a charge, in the absence of a written request.

*Walston v. State*, 245 Ga. 572, 573 (266 SE2d 185) (1980). See also *Dick v. State*, 246 Ga. 697 (11) (273 SE2d 124) (1980) (where defendant indicted for malice murder, trial court not required to charge on felony murder and voluntary manslaughter absent written request).

7. (a) After the close of evidence in the sentencing phase of the trial, a juror, outside the presence of the other jurors, expressed concerns to the court that facets of the case would hinder his judgment and ability to render an accurate and sensible decision. The court determined to resolve the juror's concerns the next day and the jury was retired for the evening. Later that evening, deputy sheriffs observed the same juror communicating with his girl friend through a motel window. After the juror threatened to jump out of the window, the deputies notified the court. The court spoke briefly with the juror by telephone, eliciting a promise from the juror to stay in the motel until morning. The following day the court heard testimony about the matter from the deputies, the juror, and the juror's girl friend. The court found that there was unauthorized contact between the juror and his girl friend, but denied Henry's motion for mistrial explaining that any presumption of harm to him had been rebutted by the facts. The trial court also determined that the juror was incapacitated and replaced him with an alternate juror.

Henry contends that the prosecution failed to rebut a presumption of harm resulting from the juror's misconduct.

> There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. [Cit.]

*Lockridge v. State*, 260 Ga. 528, 529 (397 SE2d 695) (1990). The testimony adduced at the hearing indicated that the juror's only improper communication was with his girl friend, who was neither a witness nor a juror in the case. She testified that she saw the juror for approximately ten seconds and did not attempt to discuss the case. Where a juror's unauthorized contact with another does not involve discussion about the merits of the case, such an irregularity will not necessarily require a new trial. *Smith v. State*, 218 Ga. 216 (126 SE2d 789) (1962). Furthermore, "where the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant." *Jones v. State*, 258

Ga. 96, 97 (366 SE2d 144) (1988). This is such a case. The presumption of harm was rebutted.

(b) Alternatively, Henry contends that the conduct of the juror did not reach the level of incapacity so as to require his removal from the jury. However, the juror's irregular behavior coupled with his statement to the court that he could not make an accurate decision in the sentencing phase constituted ample justification for the trial court to exercise its discretion in removing the juror. "[T]he discharge of the juror had a sound basis in that it served the legally relevant purpose of 'preserv[ing] public respect for the integrity of the judicial process.' [Cit.]" *Miller v. State*, 261 Ga. 679, 680 (410 SE2d 101) (1991).

8. Henry contends that the trial judge erred by refusing to recuse himself after communicating with the troublesome juror by telephone, outside the presence of the defendant and counsel. The trial judge denied Henry's oral motion to recuse, finding that it was legally insufficient. We agree. Uniform Superior Court Rule 25.1 requires that all motions for recusal be filed in writing and be accompanied by an affidavit asserting the facts upon which the motion is founded. Henry's motion failed in both respects.

Even if considered on the merits, the record does not indicate any harm to Henry from the denial of his motion. The trial judge reported that upon receiving a telephone call from a deputy assigned to the sequestered jury, he reemphasized to the juror that all previous courtroom instructions were still in effect, and attained the juror's assurance that he would not leave the motel or discuss the matter with any other juror. The trial judge then responded to questions regarding the communication and permitted cross-examination of the juror regarding his conduct and his ability to render a verdict based on the law and facts. Based on the necessity of the trial court to preserve the orderly sequestration of the jury, and the uncontradicted testimony of the trial court regarding the substance of the communication, the presumption of harm to Henry was rebutted.

9. Henry filed a notice of intent to raise the issue of insanity on July 1, 1994. In accord with OCGA § 17-7-130.1 the trial court appointed an independent psychiatrist, Dr. John Trice, to examine Henry.[2] Henry withdrew his notice of insanity as a defense prior to

---

[2] At the trial of a criminal case in which the defendant intends to interpose the defense of insanity, evidence may be introduced to prove the defendant's sanity or insanity at the time at which he is alleged to have committed the offense charged in the indictment or information. When notice of an insanity defense is filed, the court shall appoint at least one psychiatrist or licensed psychologist to examine the defendant and to testify at the trial. The testimony shall follow the presentation of the evidence for the prosecution and for the defense. . . .
OCGA § 17-7-130.1.

trial, but presented mental health witnesses during the sentencing phase who testified that Henry suffered from various mental illnesses. After the State presented expert witnesses in rebuttal, the trial court, relying on OCGA § 17-7-130.1 and *Tolbert v. State*, 260 Ga. 527 (397 SE2d 439) (1990), cert. denied, 500 U. S. 921 (111 SC 2025, 114 LE2d 111) (1991) called and examined Dr. Trice. Henry contends the trial court improperly commented on the issue of mitigation by calling its own mental health expert.

Where a notice of intent to present an insanity defense is filed, then later dismissed, OCGA § 17-7-130.1 does not require a court-appointed expert to testify at trial. The statute contemplates a defendant interposing the defense of insanity, which must be specifically noticed prior to trial. See Uniform Superior Court Rule 31.4. If that notice is later withdrawn, a defendant may not assert the defense of insanity absent good cause, and OCGA § 17-7-130.1 is inapplicable. See Uniform Superior Court Rule 31.4. "[OCGA] § 17-7-130.1 deals only with an insanity defense." *Bright v. State*, 265 Ga. 265, 271 (455 SE2d 37) (1995).

The defense offered evidence of Henry's mental health during the sentencing phase of the trial in mitigation of punishment. But the tender of such evidence does not constitute the assertion of an insanity defense. See Uniform Superior Court Rule 31.4. Proving that a defendant was insane at the time he or she committed acts which would otherwise constitute a crime, during the innocence/guilt phase of the trial, constitutes a complete defense to criminal liability. OCGA §§ 16-3-2; 16-3-3. Evidence of mental illness submitted during the sentencing phase is for the purpose of mitigating punishment. See *Hicks v. State*, 256 Ga. 715 (21) (352 SE2d 762) (1987). Therefore, the trial court's reliance upon *Tolbert* was misplaced.[3]

However, a trial court may exercise its discretion to summon and examine witnesses of its own choosing. *Ashley v. State*, 263 Ga. 820 (439 SE2d 914) (1994); see also McCormick on Evidence, § 8, pp. 23-28 (4th ed. 1992). In doing so, the court must employ extreme caution to prevent expressing or even intimating an opinion on the veracity of the witness or significance of the testimony. After examining Dr. Trice as to his identity and connection to the case, the trial court asked Dr. Trice to explain his evaluation of Henry and offer an opinion as to the mental health of Henry. Such neutral inquiry neither rose to the level of advocacy nor implied the court's approval of the responses. Furthermore, both the State and defendant were permitted to cross-examine the witness. The trial court did not abuse its discre-

---

[3] In *Tolbert v. State*, 260 Ga., supra, the defendant had not withdrawn his notice of intent to raise the defense of insanity.

tion by calling Dr. Trice, nor did it improperly comment upon the evidence in its examination of him.

10. (a) Henry contends that the trial court erred by refusing to charge the jury in the sentencing phase of the trial on specific examples of mitigation. "The trial court was not required to illustrate possible mitigating circumstances for the jury." *Hittson v. State*, 264 Ga. 682 (449 SE2d 586) (1994) (citing *Frazier v. State*, 257 Ga. 690 (362 SE2d 351) (1987)).

(b) It was not error for the trial court to refuse to instruct the jury, as requested by Henry, that consecutive life sentences require that a defendant serve a specified minimum of time for each consecutive count. In this state, the jury does not determine the manner in which life sentences are served. See *Spivey v. State*, 253 Ga. 187 (5) (319 SE2d 420) (1984); *Welch v. State*, 254 Ga. 603 (2) (331 SE2d 573) (1985).

(c) Henry also alleges error in the trial court's charge regarding a sentence of life without parole. The trial court charged the language of OCGA § 17-10-31.1 (d) (1):

> "life without parole" means that the defendant shall be incarcerated for the remainder of his or her natural life and shall not be eligible for parole unless such person is subsequently adjudicated to be innocent of the offense for which he or she was sentenced.

Henry contends that the instruction was misleading in that it implied that any subsequent release would be in the form of a parole or relief from sentence after a legal conviction rather than a complete pardon. The instruction given clearly stated that the appellant would not be released unless he was later determined to be innocent of the crime charged. There was no error.

11. Henry finally challenges the trial court's refusal to compensate two defense experts for the total amount of their billing requests on the ground that his ability to utilize these experts will be impaired in future proceedings. Such a contention is mere speculation. Henry failed to demonstrate that he suffered any harm by the trial court's refusal to compensate the two experts for every dollar requested. Furthermore, the record does not indicate what amount the experts requested nor what amount of compensation was actually received. Accordingly, we find the trial court did not abuse its discretion.

*Judgment affirmed. All the Justices concur.*

FLETCHER, Presiding Justice, concurring.

I concur fully in the opinion. I write to suggest that when a trial court calls and examines a witness, the better practice is for the court

to instruct the jury that by calling a witness, the court suggests nothing about credibility, and that the court's witness is to be assessed by the jury like all other witnesses. The editorial comment to Fed. R. Civ. P. 614 recommends this course and I believe it to be a sound policy.

DECIDED OCTOBER 16, 1995.

*Miller, Rucker & Associates, Curtis W. Miller, John B. Sumner,* for appellant.

*Harry N. Gordon, District Attorney, Gerald W. Brown, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Richard J. Warren, Assistant Attorney General,* for appellee.