## 27815. HERRIN v. THE STATE.

JORDAN, Justice. Marshall Hewlett Herrin appeals his conviction and sentence to life imprisonment for the murder of Larry William Wingfield. *Held:*

1. The first enumeration, asserting that the trial judge "erred in refusing to grant a new trial on the ground that a prejudicial photograph, showing evidence of other unrelated crimes, was admitted in evidence over objection of defense counsel" is without merit.

The objection made at the trial was that the photograph " had no bearing whatsoever in this particular case, and it has not even been identified." Counsel concedes in argument before this court relevancy and identification, in that the picture depicts the contents of a luggage compartment of an automobile connected with the homicide containing several pairs of gloves which tend to explain the absence of fingerprints on the vehicle. He insists, however, that the other things depicted, a sledge hammer, a crowbar, and a lock punch, are evidence of the unrelated crime of possession of tools commonly used in the commission of burglary, theft, or other crimes.

The basic elements of the above offense which the photograph allegedly depicts are possession coupled with an intent to make use thereof in the commission

of a crime. Code Ann. § 26-1602. The photograph at the most discloses possession, not intent, but even if we assume that it depicts a crime committed by the defendant, there was no timely objection in the trial court on this ground. The failure to make a specific and timely objection is treated as a waiver. *Hicks v. State,* 216 Ga. 574, 576 (118 SE2d 364).

Furthermore, when evidence is offered, part admissible, and part inadmissible, and the objection is to the evidence as a whole, it is not error to admit the whole. *Finney v. Blalock,* 208 Ga. 218 (1) (65 SE2d 920).

2. The third enumeration, asserting error on an abuse of discretion in overruling the motion for new trial as sought on the ground of newly discovered evidence, is also without merit.

The indictment alleges that the offense occurred on June 11, 1972. The trial took place on June 27, 1972. The affidavit of Mrs. Sylvia T. Herrin, the wife of the defendant, dated November 27, 1972, discloses that on June 11, 1972, Billy Andrews told her that Herrin had killed Wingfield, but that if he cared for her and the Herrins' infant child "he better keep his mouth shut." On June 15, 1972, he repeated this, coupled with the threat that otherwise he would kill her and the child. On the day of trial he again repeated this threat. The affidavit of Mrs. Shirley Andrews, widow of Billy Andrews, dated November 25, 1972, discloses that Billy Andrews told her on June 11, 1972, that he shot Larry Wingfield, that it was her fault, and that he threatened to kill her. The affidavit of Mrs. Sandra C. McClellan, dated November 20, 1972, discloses that during the night of June 10-11, 1972, her husband came back home and told her that Billy Andrews shot Wingfield; that on Sunday morning, June 11, 1972, Billy Andrews came to their home, told her husband that he was taking Herrin's automobile, and that if McClellan knew what was good for him and his family he would

keep his mouth shut and Herrin would "come out of it all right because he didn't do it and they can't prove it." This deponent also stated that she received a note in her mail box the day before trial stating that she "better not appear in court." The first affidavit of Dan Angel, a former DOI agent, is dated December 16, 1972. In it he states that Mrs. Barbara Hubbard Martin, a prosecution witness, told him she would lie in court to convict Herrin. Angel had testified on cross examination that she never made this statement. Angel also states in this affidavit that Mrs. Shirley Andrews told him that Billy Andrews killed Wingfield and threatened to kill her if she talked. In a second affidavit, dated December 29, 1972, Angel stated that he received the information from Mrs. Andrews before Herrin's trial, and that her statements to him were based on what Billy Andrews told her.

Without here stating the six elements repeated in *Bell v. State,* 227 Ga. 800, 805 (183 SE2d 357) for the grant of a new trial on the ground of newly discovered evidence, we note that Angel's repudiation of his testimony at the trial only goes to his credit and the credit of another prosecution witness and therefore, as impeaching evidence, is not newly discovered evidence of a nature to support the grant of a new trial.

The requirements as stated in *Bell,* supra, as well as *Burge v. State,* 133 Ga. 431 (66 SE 243), and *Berry v. State,* 10 Ga. 511, are necessarily for application to *admissible* newly discovered evidence. " 'Newly discovered evidence that another person has admitted that he and certain others committed the offense is no cause for a new trial, inasmuch as the admissions would not be competent evidence in behalf of the accused were a new trial ordered. *Kelly v. State,* 82 Ga. 441, and cases cited.' *Briscoe v. State,* 95 Ga. 496 (20 SE 211). And see *Rawlins v. State,* 126 Ga. 96, 99 (54 SE 924); *Attaway v. State,* 56 Ga. 363 (2)." *Johnson v. State,*

158 Ga. 192, 201 (123 SE 120). Also, see *Gibson v. State,* 178 Ga. 707, 710 (174 SE 354). The evidence of confession being inadmissible hearsay it is unnecessary to consider the effect of the threats of Billy Andrews, but in this connection see *Barbee v. State,* 177 Ga. 314 (170 SE 254).

In reaching the conclusion here made we have read and considered the majority opinion of the United States Supreme Court in Chambers v. Mississippi, 410 U. S. ___ (93 SC 1038, 35 LE2d 297), wherein that court reversed the holding of the Mississippi Supreme Court refusing to allow the defendant in a murder case to cross examine a witness who had confessed the crime because a party may not impeach his own witness, and excluding the testimony of three persons who had heard the confession because it was hearsay. The court was careful to state, however, that the holding does not "signal any diminution in the respect traditionally accorded to States in the establishment and implementation of their own criminal trial rules and procedures."

3. The sole issue raised by the second enumeration is whether the evidence supports the verdict. The defendant was with the victim on the night of the homicide, and according to the testimony of Mrs. Martin and the deceased's sister he told them the night of the homicide that he shot Wingfield. At this time he had blood on his shirt and a gun in his hand. In his unsworn statement to the jury he did not deny or explain this extrajudicial admission, but stated instead that he did not shoot Wingfield, who was one of his best friends, and did not know who shot him, but "I have my own idea, but I can't say." Whether to believe him or the witnesses for the State was for the jury. The evidence supports the verdict, and the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*

ARGUED MARCH 12, 1973 — DECIDED APRIL 16, 1973.

*Griggs & Cathey, Joseph A. Griggs, Dennis T. Cathey, Edward Strain,* for appellant.

*V. D. Stockton, District Attorney, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Assistant Attorney General, B. Dean Grindle, Jr.,* for appellee.