## 40758. LLEWELLYN v. THE STATE.

GREGORY, Justice.

The appellant appeals from the denial of his extraordinary motion for new trial. We affirm.

In March, 1977 the appellant, Robert Llewellyn, was convicted

of three counts of murder and sentenced to three concurrent life sentences. His convictions were affirmed by this court. *Llewellyn v. State,* 241 Ga. 192 (243 SE2d 853) (1978). Appellant's petition for federal habeas corpus was subsequently denied. Llewellyn v. Stynchcombe, 609 F2d 194 (5th Cir. 1980). The evidence at trial showed that appellant and Peter Winokur were competitors in the Atlanta nightclub business, catering primarily to a homosexual market. Larry Schneider testified that appellant hired him to burn down Winokur's night club. Schneider, in turn, enlisted the aid of Michael Day and Danny Millirons in this assignment. The resulting fire caused damage to Winokur's club, but did not destroy it. Another attempt was equally unsuccessful. Appellant then hired Schneider to kill Winokur; Schneider again recruited Millirons and Day. According to Schneider's trial testimony, when the three arrived at Winokur's home, Winokur was not present; instead they found two teen-aged boys awaiting Winokur's return from Florida. Once Winokur arrived Schneider and Millirons bound the hands of Winokur and the two boys, drove them to a wooded area, and shot each of them in the backs of their heads. Day was present during these events but his participation was limited to digging the victims' graves.

Schneider testified that following his arrest, Llewellyn, also under arrest for the three murders, informed Schneider in the presence of both Day and Millirons that he would provide for Schneider's wife and child during their lifetimes and secure a "top-notch" lawyer for Schneider if Schneider would take responsibility for the murders and refuse to testify against Llewellyn at trial. According to Schneider, Llewellyn suggested Schneider testify that Winokur had hired Schneider to burn Winokur's club, and Schneider murdered him when Winokur refused payment for the job. Schneider also testified that at a lunchtime recess during Llewellyn's trial, Llewellyn repeated his offer to Schneider, assuring Schneider it "wasn't too late" to halt his testimony in the case.

Michael Day, testifying on behalf of the State, corroborated Schneider's testimony as to the manner in which the arson and murders were committed. Day testified that Llewellyn promised to "take care of him" and hire a lawyer for Day if Day refrained from entering a guilty plea and went to trial on the murder charges. Schneider, Day and Danny Millirons entered guilty pleas for which they received concurrent life sentences.

Following his arrest Millirons gave a statement to police naming Llewellyn as the person who hired Schneider to burn Winokur's nightclub and to kill Winokur. Millirons' post-arrest statement, describing the events leading up to the arson and three murders, is

essentially the same as Schneider's trial testimony. The record indicates that Millirons offered to testify against Llewellyn at trial in return for a recommendation by the State of three concurrent life sentences, but the district attorney would not agree to make this recommendation, with the result that Millirons did not testify.

Following Llewellyn's conviction Winokur's estate filed a wrongful death action against him. On September 4, 1981, during discovery in this case, Danny Millirons was deposed. At that time Millirons testified that Winokur hired Schneider to burn down Winokur's nightclub; that Millirons agreed to help Schneider, but that Winokur refused payment because the club had not been destroyed; that Schneider, Day and Millirons took Winokur and his companions to a deserted area in hopes of forcing Winokur to pay them; that Schneider became enraged when Winokur refused to pay and shot each of them once in the back of the head. Millirons testified that he shot one of the victims after being ordered by Schneider to do so. Millirons testified that Llewellyn was in no way connected to any of these crimes. He testified he had made his post-arrest statement implicating Llewellyn because police had told him they "wanted to fry Llewellyn," and he believed he might receive favorable treatment in return for a statement furthering this goal.

On August 1, 1983 Llewellyn filed an extraordinary motion for new trial based on Millirons' 1981 deposition, alleging this testimony was newly discovered evidence. The trial court denied the motion finding Millirons' testimony was not so material that it would probably produce a different verdict on re-trial and was not newly discovered evidence.

1. The standard for granting a new trial on the basis of newly discovered evidence is well established. It is incumbent on a party who asks for a new trial on this ground to satisfy the court: " '(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' " *Drake v. State,* 248 Ga. 891, 894 (287 SE2d 180) (1982); *Emmett v. State,* 232 Ga. 110, 117 (205 SE2d 231) (1974). All six requirements must be complied with to secure a new trial. *Drake,* supra; *Timberlake v. State,* 246 Ga. 488, 491 (271 SE2d 792) (1980).

2. The statutes which control extraordinary motions for new trial based on newly discovered evidence require a defendant to act without delay in bringing such a motion. OCGA §§ 5-5-23 and 5-5-41

(Code Ann. §§ 70-204 and 70-303). The obvious reason for this requirement is that litigation must come to an end. See *Graddy v. Hightower,* 1 Ga. 252 (1846). Llewellyn has failed to meet this requirement in this case. The record fails to show any effort by Llewellyn to obtain this evidence from Millirons during the four year interval between trial and Millirons' deposition. Further, Llewellyn waited two years following Millirons' exculpatory testimony to bring this action.

3. After carefully considering, once again, the evidence presented at Llewellyn's trial, see 241 Ga. 192, supra, we are compelled to agree with the trial court that Millirons' most recent statement is not evidence so material that it would probably produce a different verdict. As the State points out, were a new trial granted, Millirons' post-arrest statement implicating Llewellyn in the crimes would be admissible not only to impeach Millirons' most recent statement, but as substantive evidence. See *Gibbons v. State,* 248 Ga. 858 (286 SE2d 717) (1982). It also does not escape notice that Millirons' current version of the facts is identical to the story Schneider testified Llewellyn, on two occasions and in the presence of Millirons, attempted to persuade Schneider to tell in court. Considering these circumstances along with the evidence presented against Llewellyn at trial, we cannot say Millirons' most recent testimony would likely result in a verdict in Llewellyn's favor.

The trial court did not err in denying the extraordinary motion for new trial.

*Judgment affirmed. Hill, C. J., Marshall, P. J., Clarke, Smith, Bell, JJ., and Judge Cloud Morgan concur. Weltner, J., disqualified.*

DECIDED APRIL 5, 1984.

*Blackburn, Bright, Edwards & Dodd, J. Converse Bright,* for appellant.

*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, Michael J. Bowers, Attorney General,* for appellee.