### A99A0737. JOHNSON v. THE STATE.
(513 SE2d 291)

JOHNSON, Chief Judge.

A jury found Roy Johnson guilty of aggravated sodomy and aggravated child molestation. Johnson appeals from the order denying his motion for new trial. For the reasons which follow, we affirm.

On Saturday, June 17, 1995, investigators with the Fayette County Sheriff's Department went to the Landmark Mobile Home Park in response to a "suspicious activity" call. The investigators spoke with a ten-year-old boy, T. L., who told them that his uncle, Johnson, had engaged him in acts of oral sodomy. T. L. was later interviewed by a caseworker with the Department of Family & Children Services. In this videotaped interview, T. L. said that Johnson molested him repeatedly over a 21-day period. The molestation began when T. L. moved from Arkansas, where he had been living with an aunt, back to the mobile home occupied by his mother, uncle, and others. Johnson molested T. L. late at night on a sofa in the living room of the mobile home. Johnson made T. L. orally sodomize him; Johnson orally sodomized T. L. The videotaped interview was played for the jury. T. L. testified at trial and said that everything he told the investigators in his taped interview was true.

The investigators testified that when they could not locate Johnson, they gave the warrants for his arrest to the Fayette County Fugitive Squad. On August 3, 1995, Johnson turned himself in to the Fayette County Sheriff's Department. After being read his *Miranda* rights and signing a waiver form, Johnson admitted to the investigators that he had orally sodomized T. L. three weeks after T. L. returned from Arkansas. Johnson did not testify at trial; however, he presented the testimony of two witnesses who said they had no reason to suspect that T. L. was being molested by Johnson. The jury convicted Johnson on both counts.

At the hearing on Johnson's motion for new trial, T. L. recanted his testimony. T. L. said that his other uncle, Obie Anglin, was the one who molested him. T. L. said he lied because he was afraid of Anglin. Anglin pled guilty, however, to committing anal sodomy upon T. L. and these acts occurred on July 5, 1997.

1. In his first enumeration of error, Johnson argues that the trial court erred in denying his motion for new trial based on the "newly discovered evidence" that T. L. recanted his testimony that Johnson molested him. Johnson argues that because T. L. recanted, his previous testimony has no value; therefore, no evidence remains with which to corroborate his confession. Thus, he concludes the evidence against him is insufficient to support his conviction. We do not agree with this analysis.

"That a material witness for the State, who at the trial gave direct evidence tending strongly to show the defendant's guilt, has since the trial made statements even under oath that [his] former testimony was false, is not cause for a new trial. Declarations made after the trial are entitled to much less regard than sworn testimony delivered at the trial. This difference in value must be recognized, so long as there has been no conviction of perjury. Provision is made for setting aside verdicts resting on perjury, but there must first be a conviction. The only exception to the rule against setting aside a verdict without proof of a material witness' conviction for perjury, is where there can be no doubt of any kind that the State's witness' testimony in every material part is purest fabrication." (Citations and punctuation omitted.) *Logan v. State*, 212 Ga. App. 734, 738 (2) (442 SE2d 883) (1994). A recantation impeaches the witness' prior testimony. See, e.g., *McKnight v. State*, 211 Ga. App. 653 (1) (440 SE2d 249) (1994). However, it is not the kind of evidence that proves the witness' previous testimony was the purest fabrication. See, e.g., *Fugitt v. State*, 251 Ga. 451, 452-453 (1) (307 SE2d 471) (1983) (the evidence offered was extrinsic proof that the witness' testimony was physically impossible; consequently, the trial court was able to determine the truth of the matter without having to take into account the witness' credibility). In this case, Johnson presented no such evidence of "pure fabrication" to the court below or to this Court. Therefore, the trial court properly denied the motion. Compare *Fugitt*; see *Miller v. State*, 226 Ga. App. 509, 514-515 (4) (486 SE2d 911) (1997).

Further, the fact that T. L. recanted does not render the evidence against Johnson insufficient. Even if T. L. had recanted during trial, his prior inconsistent statements to the investigators would have been admissible as substantive evidence of Johnson's guilt. See *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982). As a prior inconsistent statement, a recanted accusation can be sufficient to corroborate a confession. See *Carswell v. State*, 179 Ga. App. 56, 60-61 (345 SE2d 66) (1986); *Kirby v. State*, 187 Ga. App. 88, 89 (1) (369 SE2d 274) (1988). The jury was fully charged on the law pertaining to the corroboration of confessions. Thus, T. L.'s testimony, even if it had been impeached with a recantation at trial, taken in conjunction with Johnson's confession, would have been sufficient to sustain the jury's

verdict. See, e.g., *Brady v. State*, 233 Ga. App. 287, 288 (1) (503 SE2d 906) (1998); *Patterson v. State*, 212 Ga. App. 257 (441 SE2d 414) (1994). The trial court properly denied Johnson's motion for new trial.

2. In his second enumeration, Johnson argues the trial court erred in denying his motion in limine to redact a portion of T. L.'s videotaped testimony. We agree that the trial court should have had the state omit from the tape T. L.'s hearsay statements that Johnson had asked another juvenile "to play touchy feely." See *Woodard v. State*, 269 Ga. 317, 321-323 (3) (496 SE2d 896) (1998). We do not agree, however, that this statement constitutes similar transaction evidence for which a Uniform Superior Court Rule 31.3 (B) hearing was required. T. L.'s statement was neither offered nor used by the State as similar transaction evidence. In light of Johnson's confession, T. L.'s trial testimony, the testimony of the investigators and caseworker, and T. L.'s detailed and graphic videotaped testimony, we do not believe the hearsay statement contributed to the guilty verdict. Consequently, the error does not warrant reversal. See id. at 324 (4).

3. In his third enumeration of error, Johnson complains that the trial court did not fully charge the jury on the credibility of witnesses. When the court asked if Johnson had any objections or exceptions to the charge, he only objected to the court's refusal to give three of his requested charges, none of which pertained to witness credibility. He did not reserve objections to the charge as a whole. Accordingly, he waived the right to raise this issue on appeal. See *Smith v. State*, 268 Ga. 42, 43 (2) (485 SE2d 189) (1997).

4. In his final enumeration of error, Johnson contends his convictions must be reversed because the statute criminalizing sodomy was declared unconstitutional by our Supreme Court in *Powell v. State*, 270 Ga. 327 (510 SE2d 18) (1998). We disagree. The Court held that OCGA § 16-6-2 infringed upon a constitutionally protected right of privacy only to the extent it criminalized "the performance of private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent." Clearly, the acts of sodomy charged in this case do not fall within that class. The trial court did not err in denying Johnson's motion for new trial.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED MARCH 3, 1999 — 

*Ballard & Ballard, Scott L. Ballard*, for appellant.

*William T. McBroom III, District Attorney, James E. Hardin, Assistant District Attorney*, for appellee.