S07A1758. DAVIS v. THE STATE.
(660 SE2d 354)

MELTON, Justice.

Troy Anthony Davis was convicted of murdering Savannah police officer Mark MacPhail[1] and of related crimes. He was sentenced to death for the murder, and this Court affirmed. *Davis v. State*, 263 Ga. 5 (426 SE2d 844) (1993), cert. denied, 510 U. S. 950 (114 SC 396, 126 LE2d 344) (1993). He filed a petition for writ of habeas corpus in the Superior Court of Butts County, and this Court affirmed the denial of that petition. *Davis v. Turpin*, 273 Ga. 244 (539 SE2d 129) (2000), cert. denied, 534 U. S. 842 (122 SC 100, 151 LE2d 59) (2001). See also *Davis v. Thomas*, 266 Ga. 835 (471 SE2d 202) (1996) (reversing the habeas court's denial of a continuance). He filed a federal habeas petition, and his appeals from the denial of that petition failed. *Davis v. Terry*, 465 F3d 1249 (11th Cir. 2006), cert. denied, ___ U. S. ___ (127 SC 3010, 168 LE2d 728) (2007). After the trial court issued a new order for his execution, Davis filed an extraordinary motion for new trial on July 9, 2007, eight days before the beginning of the week-long period set for his execution. See OCGA § 5-5-41 (b). The trial court denied the extraordinary motion for new trial without conducting a hearing. Davis then filed an application for discretionary appeal and a motion for a stay of execution in this Court. While the application

---

[1] On direct appeal, this Court adopted the spelling of the victim's name contained in the trial transcripts. We now adopt the spelling that presently appears to be correct.

was pending, the State Board of Pardons and Paroles granted a temporary stay of execution and scheduled a hearing. On August 3, 2007, this Court dismissed Davis's motion for a stay of execution as moot and granted his application for discretionary appeal. *Davis v. State*, 282 Ga. 368 (651 SE2d 10) (2007). The State Board of Pardons and Paroles then rescinded its stay of execution and suspended its consideration of Davis's petition for clemency while this Court considers the instant appeal. In light of the following discussion, we conclude that the trial court did not abuse its discretion in denying Davis's extraordinary motion for new trial without first conducting a hearing, and, accordingly, we affirm.[2]

1. The evidence at trial authorized the jury to find the following: In the early morning of August 19, 1989, Davis was at a pool hall in Savannah with his friends, Sylvester "Red" Coles and 16-year-old Darrell "D.D." Collins. Nearby, a homeless man named Larry Young was exiting a convenience store. Coles asked Young for one of the beers Young had just purchased. When Young refused, Coles followed him up the street, cursing at him. Davis and Collins circled around a bank in an apparent flanking maneuver and joined Coles in surrounding Young. Someone shouted a threat about shooting Young, and Davis came from behind Young and struck him in the head with a pistol, injuring him badly. Collins fled as soon as Young was struck. Davis and Coles fled immediately afterward when it became obvious that the police were being called. Mark MacPhail, a police officer working off-duty at the nearby bus station and Burger King, began pursuing Davis and Coles and shouted for them to stop. Coles stopped, and MacPhail ran past him. Davis kept running and fired a handgun at MacPhail, who was shot and fell. Davis then stood over MacPhail smiling and fired again. Altogether, MacPhail was shot three times, once in the face, once in the right thigh, and once in the chest.

Earlier on the night of the murder, a man named Michael Cooper was shot while leaving a party. A bullet retrieved from Michael Cooper's body during his medical treatment was similar to bullets from the murder scene. Shell casings retrieved from the two scenes were matched with greater certainty. Testimony at trial identified Davis as the person who shot Michael Cooper.

---

[2] We must point out that, contrary to the dissent's implication otherwise, this opinion does not hold and nowhere states that recantations and confessions must be categorically excluded and never considered in cases such as this. Nor do we hold that a trial court has no right to hold a hearing to consider the evidence with which it has been presented. We simply hold that, in dealing with the evidence and in its decision not to hold a hearing, the trial court did not abuse the discretion with which it is empowered by law under the facts of this case.

At trial, Davis's defense centered on the theory that Coles was the murderer. Both Davis and Coles testified, each claiming their innocence. The evidence at trial authorized the jury to conclude beyond a reasonable doubt that Davis was the man who struck Larry Young and shot Officer MacPhail.

2. Because the statutes authorizing extraordinary motions for new trials are silent as to procedural details, "the procedural requirements for such motions are the product of case law." *Dick v. State*, 248 Ga. 898, 899 (2) (287 SE2d 11) (1982). We have held that a new trial may be granted based on newly-discovered evidence only where the defendant shows each of the following:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Citations and punctuation omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). "Failure to show *one* requirement is sufficient to deny a motion for a new trial." (Emphasis supplied.) Id. Extraordinary motions for new trial are "not favored," and "a stricter rule is applied to an extraordinary motion for a new trial based on the ground of newly available evidence than to an ordinary motion on that ground." (Citation and punctuation omitted.) *Crowe v. State*, 265 Ga. 582, 590-591 (15) (458 SE2d 799) (1995). A trial court's ruling on such a motion "will not be reversed unless it affirmatively appears that the court abused its discretion. [Cit.]" (Citation and punctuation omitted.) *Young v. State*, 269 Ga. 490, 491-492 (2) (500 SE2d 583) (1998). For the reasons set forth below, we conclude that the trial court did not abuse its discretion in denying Davis's extraordinary motion for new trial without first conducting a hearing, particularly in light of the requirement under *Timberlake* that newly-discovered evidence be so material that it probably would result in a different verdict, *Timberlake*, 246 Ga. at 491 (1), and in light of the duty of a defendant to present in the affidavits supporting his or her extraordinary motion for new trial "*facts* sufficient to authorize that the motion be granted." (Emphasis in original.) *Dick*, 248 Ga. at 899 (2).

3. Davis's extraordinary motion for new trial relied primarily on affidavit testimony consisting of four types, recantations by trial witnesses, statements recounting alleged admissions of guilt by

Coles, statements that Coles disposed of a handgun following the murder, and an alleged eyewitness account. We discuss each of these affidavits, which are the ones highlighted by Davis in his brief on appeal, by category below.

A. *Recantations by Trial Witnesses*

This Court has noted the general lack of credibility that should be assigned to recantation testimony in the context of an extraordinary motion for new trial, stating that such "[d]eclarations made after the trial are entitled to much less regard than sworn testimony delivered at the trial." *Norwood v. State*, 273 Ga. 352, 353 (2) (541 SE2d 373) (2001) (quoting *Johnson v. State*, 236 Ga. App. 764, 765 (1) (513 SE2d 291) (1999)). Trial testimony is closer in time to the crimes, when memories are more trustworthy. Furthermore, the trial process itself, including public oaths, cross-examination, and the superintendence of a trial judge, lends special credibility to trial testimony. Accordingly, we have quoted the Court of Appeals as follows:

> "The only exception to the rule against setting aside a verdict[,] without proof of a material witness' conviction for perjury, is where there can be no doubt of any kind that the State's witness' testimony in every material part is purest fabrication." [Cit.] A recantation impeaches the witness' prior testimony. [Cit.] However, it is not the kind of evidence that proves the witness' previous testimony was the purest fabrication. See, e.g., *Fugitt v. State*, [251 Ga. 451 (1) (307 SE2d 471) (1983)] (the evidence offered was extrinsic proof that the witness' testimony was physically impossible; consequently, the trial court was able to determine the truth of the matter without having to take into account the witness' credibility).

Id. See also *Drake v. State*, 248 Ga. 891, 894 (287 SE2d 180) (1982). The trial court relied on this principle in disregarding the alleged recantations in Davis's case. Davis argues that the sheer number of recantations in his case demands a different analysis. Pretermitting whether such an argument might ever be persuasive, we find it unpersuasive in Davis's case in light of the analysis that follows. Thus, under the right for any reason principle, we conclude that Davis has failed to show that these alleged recantations support his extraordinary motion for new trial.

At trial, Jeffrey Sapp testified that he was an acquaintance of Davis and knew him by the nickname, "Rough as Hell." Sapp further testified at trial that Davis admitted that he struck Larry Young, shot Mark MacPhail, and then "finished the job." In an affidavit dated 1996, Sapp stated that he had lied to officers about Davis's admission

because he wanted the officers to stop "harassing" him and that he later felt pressured by authorities to maintain his story at trial. Kevin McQueen also testified at trial that Davis confessed his guilt to him. McQueen testified that Davis, while in jail, admitted to shooting MacPhail and then shooting him again to ensure his death because MacPhail had seen his face. McQueen stated in an affidavit dated 1996 that he lied at trial because he was angry at Davis. We note that, even if the recantations by Sapp and McQueen were credited as true, they would show merely that Davis did not admit his guilt to these witnesses, not that Davis was not guilty. Furthermore, the witnesses' original testimony against Davis would remain admissible against him in any retrial. These affidavits lack the type of materiality required to support an extraordinary motion for new trial, as they do not show the witnesses' trial testimony to have been the "purest fabrication." *Norwood*, 273 Ga. at 353 (2). See *Timberlake*, 246 Ga. at 491 (1). Furthermore, we note that these affidavits were both obtained in 1996, long before Davis initiated his federal habeas corpus proceedings. Thus, it appears that Davis has not been diligent in presenting these affidavits to the trial court, which is another of the requirements in an extraordinary motion for new trial. Id. See *Llewellyn v. State*, 252 Ga. 426, 428-429 (2) (314 SE2d 227) (1984) (holding that a post-trial delay in obtaining and presenting allegedly exculpatory evidence shows a lack of required diligence).

Larry Young gave testimony at trial that tended to identify Davis as the one who struck him. His testimony addressed, in part, the clothing persons involved were wearing and the location they were standing during the argument and when Young was struck. In an affidavit dated 2002, Young stated that he was, in fact, unable to "remember what anyone looked like or what different people were wearing" and that he "just couldn't tell who did what." This new expression of uncertainty fails to show that Davis was not in fact the perpetrator and fails to show that the witness's testimony was the "purest fabrication"; therefore it lacks the materiality necessary to support an extraordinary motion for new trial. *Norwood*, 273 Ga. at 353 (2). See *Timberlake*, 246 Ga. at 491 (1).

Darrell Collins, the 16-year-old boy who followed Davis as he approached Larry Young, testified at trial that he witnessed Davis striking Young. This testimony was important because other witnesses testified that the person who struck Young also shot MacPhail. Collins stated in an affidavit dated 2002 that he did not witness Young being struck. Collins also stated that he felt pressured to testify as he did. This testimony does not in any way show that Davis was not guilty of striking Young and shooting MacPhail, and Collins's original trial testimony would still be admissible against Davis in any retrial. Collins's affidavit lacks the type of materiality required to

support an extraordinary motion for new trial, as it does not show Collins's trial testimony to have been the "purest fabrication." *Norwood*, 273 Ga. at 353 (2). See *Timberlake*, 246 Ga. at 491 (1).

Antoine Williams testified at trial that he was "sixty percent" certain that Davis was the shooter. His testimony also included a description of the location of the person who struck Larry Young that was consistent with Davis's location. In an affidavit dated 2002, he stated that he could not identify the shooter. Because there is nothing in this affidavit testimony that indicates affirmatively that Davis was not guilty, and because Williams's original testimony would be admissible against Davis at any retrial, the affidavit testimony lacks the type of materiality required to support an extraordinary motion for new trial, as it does not show Williams's trial testimony to have been the "purest fabrication." *Norwood*, 273 Ga. at 353 (2).

Dorothy Ferrell identified Davis at trial as the shooter. In an affidavit dated 2000, she states that she felt pressured to make the identification and that she did not actually see who shot MacPhail. Again, however, her new version of events lacks the required materiality, because her original trial testimony would be admissible against Davis at any retrial and because her new affidavit testimony does not show her trial testimony to have been the "purest fabrication." *Norwood*, 273 Ga. at 353 (2).

Harriet Murray identified Davis at trial as the shooter, describing in detail his physical features on the night of the murder and his gun. She was cross-examined about inconsistencies between her trial testimony and statements she made to investigators and in Davis's preliminary hearing; however, she never backed down from her identification of Davis. Davis submitted an un-notarized statement from Murray dated 2002 in support of his extraordinary motion for new trial in which she seems to identify Coles as the shooter. Davis also submitted an affidavit dated 2002 from an attorney stating that, when she signed her statement, Murray refused to wait for a notary to arrive or to allow a notary to come to her house later. As we noted above, an extraordinary motion for new trial must include the "affidavit of the witness himself" or an adequate explanation for its absence. *Timberlake*, 246 Ga. at 491 (1). We find that the five-year-old affidavit presented by Davis as an explanation for the absence of Murray's sworn testimony is inadequate, and, accordingly, we disregard her unsworn statement. Furthermore, even if we were to consider this unsworn statement, we find that yet another inconsistent statement from Murray, made years after the murder, would lack the materiality required to support Davis's extraordinary motion for new trial because it does not show her trial testimony to have been the "purest fabrication." *Norwood*, 273 Ga. at 353 (2). See *Timberlake*, 246 Ga. at 491 (1).

B. *Statements Recounting Alleged Admissions of Guilt by Coles*
We have held as follows:

> It is the long-standing rule in this state that declarations to
> third persons against the declarant's penal interest, to the
> effect that the declarant, and not the accused, was the actual
> perpetrator of the offense, are not admissible in favor of the
> accused at his trial . . . or to procure a new trial on the basis
> of newly discovered evidence.

(Citations omitted.) *Timberlake*, 246 Ga. at 492 (1). This rule rests at
least in part on the concept that a trial court should consider only
evidence that would be admissible if a new trial were ordered. See
*Herrin v. State*, 230 Ga. 476, 478-479 (2) (197 SE2d 734) (1973). See
also OCGA § 5-5-23 (mandating that newly-discovered evidence pre-
sented in a motion for new trial must not be merely impeaching).
However, we have held that testimony recounting admissions of guilt
by a declarant to a third party are admissible *at trial* when "the
declarant is present, testifies, and is subject to cross-examination."
*Guess v. State*, 262 Ga. 487, 488-489 (2) (422 SE2d 178) (1992). As we
have noted already, Coles testified at Davis's trial, so any alleged
admission of guilt by him to a third party would have been admissible
at Davis's original trial. Such testimony at trial would be substantive
evidence and not merely impeaching of the declarant. *Gibbons v.
State*, 248 Ga. 858, 862 (286 SE2d 717) (1982). But our rule against
allowing testimony about such alleged admissions to third persons
also rests on the separate rationale that "a person could subvert the
ends of justice by [falsely] admitting the crime to others and then
absenting himself." *Timberlake*, 246 Ga. at 492 (1). This concern
would exist in the context of an extraordinary motion for new trial
even where the declarant has previously testified at trial. We need
not decide here, however, whether the rule against such testimony in
support of an extraordinary motion for new trial should apply even
where the declarant has testified at trial, because the affidavits in
question are not sufficiently material to support an extraordinary
motion for new trial. Id. at 491 (1).

Davis's extraordinary motion for new trial included an affidavit
from Anthony Hargrove dated 2001. Anthony Hargrove stated that
he is the brother of Gary Hargrove, whose affidavit is discussed below.
Anthony Hargrove further stated that he and Sylvester Coles were
smoking marijuana at a party about a year after Officer MacPhail's
murder and that Coles stated that "he killed a policeman and a guy
named Troy took the fall for it." Davis also presented an affidavit from
Shirley Riley dated 2001 in which she stated that, while she and Coles
were drinking beside a pool one day, she asked Coles what happened

to the officer and he stated that he shot the officer but that it was an accident. Tellingly, however, she added the following: "Maybe Sylvester was just trying to impress me. I don't know for sure who actually shot the officer." Finally, Davis presented an affidavit from Darold Taylor dated 2001. Taylor stated that Coles frequently threatened people and boasted about his violent nature. He also stated that, one day when he and Coles were drinking beers together, he asked Coles about rumors that Coles was the shooter. Taylor stated that, after first telling him to "stay out of his business," Coles indicated that he was the one who shot the officer. These three affidavits must be considered, if at all, in light of the evidence presented at trial, including Coles's own testimony. Even the statements about the alleged admissions themselves contain evidence that they are not trustworthy, as the statements show that Coles was someone who wanted to be feared and that at least one of the persons to whom he made his admissions doubted his account. Although the jury clearly would not have deemed these statements utterly irrelevant, the affidavits, if considered at trial, would have merely forced the jury to weigh Davis's guilt or innocence in ways that were independent of the trustworthiness of Davis and Coles, who both actually testified at trial and proclaimed their innocence. Thus, pretermitting the categorical analysis applied by the trial court and applying the right for any reason principle, we conclude that these affidavits are not sufficiently material to support Davis's extraordinary motion for new trial. Id.

C. *Statements that Coles Disposed of a Handgun Following the Murder*

Davis presented affidavits from Tonya Johnson and Anita Saddler stating that they observed Coles in possession of a handgun shortly after the murder. The trial court did not abuse its discretion in finding that these affidavits did not support Davis's extraordinary motion for new trial. *Young*, 269 Ga. at 491-492 (2). First, as the trial court found, Davis has failed to show that he exercised due diligence in obtaining and presenting this testimony earlier. *Timberlake*, 246 Ga. at 491 (1). Tonya Johnson was a witness at trial, so she was clearly available to Davis. Anita Saddler's affidavit testimony reveals that she could have been identified through Tonya Johnson, showing that she also was available to Davis at trial. Furthermore, as with other affidavits discussed above, Tonya Johnson's affidavit was obtained in 1996, and Davis has failed to show any reason for his failure to exercise due diligence in coming forward with this new evidence in the trial court sooner, at least before his federal habeas proceedings began. See *Llewellyn*, 252 Ga. at 428-429 (2). Finally, the affidavits are not so material that they can support Davis's extraordinary motion for new trial. *Timberlake*, 246 Ga. at 491 (1). Although Coles

testified that he disposed of his handgun before the murders, his and other testimony made clear that he had possessed a handgun earlier on the night of the murders. Davis's new testimony, even if not disregarded for other reasons, is not so material to that core question that it can support his extraordinary motion for new trial. Id.

D. *Alleged Eyewitness Accounts*

Daniel Kinsman was one of a number of members of the military waiting at the Burger King drive-through in a van during the murder. In an un-notarized statement dated 2002, Kinsman stated that he was "confident that [he] would not have been able to make any identification of the shooter due to poor lighting and the chaotic nature of the scene" and that the incident was "over as soon as it began." Nevertheless, Kinsman stated that he had no doubt that the shooter used his left hand and that, "while [he] could not make out the color of the gun, it had a shiny finish which was reflected from the muzzle flash." Kinsman's unsworn statement is followed by an affidavit from an attorney, also dated 2002, explaining that the attorney was "unsuccessful" in his repeated attempts to obtain a notary for Kinsman's statement. As with the unsworn statement of Harriet Murray, this five-year-old explanation for the absence of sworn testimony is inadequate. See *Timberlake*, 246 Ga. at 491 (1) (requiring the "affidavit of the witness himself" or an adequate explanation for its absence). Furthermore, as the trial court noted, Davis has failed to show that he exercised due diligence in obtaining this new testimony, which was obtained from a witness who was readily identifiable even pre-trial. Id. Finally, Davis's argument about the contents of this unsworn statement is questionable. Several witnesses testified at trial that the murder weapon was dark in color, not chrome like Coles's handgun. While Kinsman stated in his affidavit that the finish of the handgun was "shiny," as many surfaces of various colors are, in the same affidavit he affirmatively disclaimed his ability to state what color the finish was. Thus, Kinsman's affidavit sheds little light on whether Coles's or Davis's handgun was the murder weapon. Furthermore, even if we were to accept that the shooter fired with his left hand, Davis has not attempted to show which is his dominant hand or which is Coles's dominant hand. Such details might seem trivial, but one who seeks to overturn his conviction for murder many years later bears a heavy burden to bring forward convincing and detailed proof of his innocence. Thus, the trial court understandably found that this testimony was not sufficiently material. Id. For all of the foregoing reasons, we conclude that the trial court did not abuse its discretion by concluding that Kinsman's affidavit did not support Davis's extraordinary motion for new trial. *Young*, 269 Ga. at 491-492 (2).

Gary Hargrove, apparently the brother of affiant Anthony Hargrove, stated in an affidavit dated 2001 that he was an eyewitness to the murder but that he never came forward, because he was on parole and was out past his curfew. However, upon our careful review of this affidavit, we find no abuse of discretion in the trial court's finding that this affidavit lacks sufficient materiality to support Davis's extraordinary motion for new trial. *Young*, 269 Ga. at 491-492 (2); *Timberlake*, 246 Ga. at 491 (1). In fact, the affidavit might actually be read so as to confirm trial testimony that Davis was the shooter. Witnesses at trial indicated that one man struck Larry Young, continued to run when ordered to stop by Officer MacPhail, and then shot MacPhail. In his affidavit, Gary Hargrove indicated that Coles was the one who stood still during the murder and that Davis was the one who kept running. The true import of the witness's testimony appears to be that Davis was the one who ran from the officer. Furthermore, Davis bears a heavy burden to come forward with clear evidence of his innocence, not a craftily-worded and vague account that can be represented as stating one thing when it might very well state the opposite. Thus, we find no abuse of discretion in the trial court's finding that the affidavit "falls short of the . . . assertion that Mr. Hargrove observed Mr. Coles murder Officer MacPhail" and the trial court's finding that the affidavit lacks sufficient materiality. Id.

4. Particularly in this death penalty case where a man might soon be executed, we have endeavored to look beyond bare legal principles that might otherwise be controlling to the core question of whether a jury presented with Davis's allegedly-new testimony would probably find him not guilty or give him a sentence other than death. In that spirit, we have chosen to focus primarily on one of the required showings for an extraordinary motion for new trial, the requirement that the new evidence be "so material that it would probably produce a different verdict." *Timberlake*, 246 Ga. at 491 (1). In weighing this new evidence, we do not ignore the testimony presented at trial, and, in fact, we favor that original testimony over the new. At least one original witness has never recanted his in-court identification of Davis as the shooter, which included a description of his clothing and the location he was in when he struck Larry Young. As we have noted above, most of the witnesses to the crime who have allegedly recanted have merely stated that they now do not feel able to identify the shooter. At trial, the jury had the benefit of hearing from witnesses and investigators close to the time of the murder, including both Davis and Coles claiming the other was guilty. We simply cannot disregard the jury's verdict in this case. For that reason, along with the other reasons set forth above, we conclude that the trial court did not abuse its discretion in denying Davis's extraordinary motion for new trial. *Young*, 269 Ga. at 491-492 (2).

5. Davis argues that the trial court should not have denied his extraordinary motion for new trial without first holding a hearing. We have held as follows:

> [I]f the pleadings in an extraordinary motion for new trial in a criminal case do not contain a statement of *facts* sufficient to authorize that the motion be granted if the facts developed at the hearing warrant such relief, it is not error for the trial court to refuse to conduct a hearing on the extraordinary motion.

(Emphasis in original.) *Dick*, 248 Ga. at 899 (2). This requirement mandates that a defendant provide sworn affidavit testimony, or an explanation for the absence of such affidavit testimony, showing with clarity and specificity the facts he or she intends to prove in a hearing and how those proffered facts support his or her claim that a new trial is warranted. Upon our careful review of Davis's extraordinary motion for new trial and the trial record, we find that Davis failed to present such facts in his motion and, therefore, that the trial court did not abuse its discretion in denying that motion without a hearing.

6. Davis argued in the trial court that to apply Georgia's procedures for extraordinary motions for new trial in a manner that allows for his execution would be unconstitutional. See *Herrera v. Collins*, 506 U. S. 390 (113 SC 853, 122 LE2d 203) (1993). We hold that Georgia law, as described and applied above, is not unconstitutional.

*Judgment affirmed. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Benham, J., who dissent.*

SEARS, Chief Justice, dissenting.

As the majority notes, Georgia law is largely silent regarding the standards that should govern extraordinary motions for new trial. Thus, by necessity, "the procedural requirements for such motions are the product of case law."[3] This Court has attempted to set standards that promote respect for the judicial process and confidence in the outcomes of that process. Thus, we have required that defendants exercise diligence in discovering and bringing their claims, and we have set the threshold very high for showing that new evidence should take precedence over the evidence presented at trial.[4] However, I believe that this case illustrates that this Court's approach in extraordinary motions for new trials based on new evidence is overly rigid and fails to allow an adequate inquiry into the

---

[3] *Dick v. State*, 248 Ga. 898, 899 (2) (287 SE2d 11) (1982).
[4] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

fundamental question, which is whether or not an innocent person might have been convicted or even, as in this case, might be put to death.

We have noted that recantations by trial witnesses are inherently suspect, because there is almost always more reason to credit trial testimony over later recantations. However, it is unwise and unnecessary to make a categorical rule that recantations may *never* be considered in support of an extraordinary motion for new trial. The majority cites case law stating that recantations may be considered only if the recanting witness's trial testimony is shown to be the "purest fabrication."[5] To the extent that this phrase cautions that trial testimony should not be lightly disregarded, it has obvious merit. However, it should not be corrupted into a categorical rule that new evidence in the form of recanted testimony can never be considered, no matter how trustworthy it might appear. If recantation testimony, either alone or supported by other evidence, shows convincingly that prior trial testimony was false, it simply defies all logic and morality to hold that it must be disregarded categorically.

The majority opinion also notes concerns about confessions by persons other than the defendant. In particular, the majority states that a witness might falsely confess and then flee prosecution. However, this concern could be addressed by requiring the witness to appear in the trial court before his or her alleged confession may be considered. Thus, the trial court would have benefit of the same testimony and cross-examination that a jury would have if a new trial were ordered.

The majority opinion wisely states the following:

> [W]e have endeavored to look beyond bare legal principles that might otherwise be controlling to the core question of whether a jury presented with Davis's allegedly-new testimony would probably find him not guilty or give him a sentence other than death.

Maj. Op., p. 447. I would go further. Because this Court is entrusted with establishing the procedures and standards governing extraordinary motions for new trial, I would hold that recantations and confessions to third parties are not categorically excluded.[6] Instead,

---

[5] *Norwood v. State*, 273 Ga. 352, 353 (2) (541 SE2d 373) (2001) (quoting *Johnson v. State*, 236 Ga. App. 764, 765 (1) (513 SE2d 291) (1999)).

[6] The effect of the majority's ruling that the witnesses' recantations "lack the type of materiality required to support an extraordinary motion for new trial, as they do not show the witnesses' trial testimony to have been the 'purest fabrication,'" Maj. Op., p. 442, is to

they should be assessed by the trial court within its sound discretion.[7] This Court was right to hold that such testimony is inherently suspect, and the Court was right to hold that a trial court should consider only such evidence as would be admissible if a new trial were ordered. However, this Court is free to adopt rules and standards that best promote the ends of justice, and this case illustrates with alarming clarity why this Court's rules should allow trial courts to consider all forms of evidence that would be admissible if a new trial were ordered and to exercise sound discretion in weighing that evidence.

While the majority wisely decides to look beyond bare legal principles and seeks to consider the strength of Davis's new evidence, I believe that it has weighed that evidence too lightly. In this case, nearly every witness who identified Davis as the shooter at trial has now disclaimed his or her ability to do so reliably. Three persons have stated that Sylvester Coles confessed to being the shooter. Two witnesses have stated that Sylvester Coles, contrary to his trial testimony, possessed a handgun immediately after the murder. Another witness has provided a description of the crimes that might indicate that Sylvester Coles was the shooter. Perhaps these witnesses' testimony would prove incredible if a hearing were held. Perhaps the majority is correct that the alleged eyewitness's testimony will actually show Davis's guilt rather than his innocence. But the collective effect of all of Davis's new testimony, *if* it were to be found credible by the trial court in a hearing,[8] would show the probability that a new jury would find reasonable doubt of Davis's guilt or at least sufficient residual doubt to decline to impose the death penalty. Accordingly, I would order the trial court to conduct a hearing, to weigh the credibility of Davis's new evidence, and to exercise its discretion in determining if the new evidence would create the probability of a different outcome if a new trial were held.

I am authorized to state that Presiding Justice Hunstein and Justice Benham join in this dissent.

---

categorically exclude recantations except in those exceedingly rare instances when the fabrication is proven by extrinsic evidence, see *Fugitt v. State*, 251 Ga. 451 (1) (307 SE2d 471) (1983). Also, the majority merely pretermits the question of whether confessions by another to third parties should be admissible, rather than explicitly holding that they are admissible.

[7] *Young v. State*, 269 Ga. 490, 491-492 (2) (500 SE2d 583) (1998).

[8] The issues raised by the majority regarding Davis's diligence in bringing his new evidence before the trial court and regarding the fact that several of the affidavits are not notarized also seem well suited to being addressed by the trial court in a hearing under the facts of this case. Furthermore, even if the affidavits affected by these issues were discounted, I still believe a hearing on the remaining new evidence would be warranted.

DECIDED MARCH 17, 2008 —
RECONSIDERATION DENIED APRIL 14, 2008.

*Thomas H. Dunn, Arnold & Porter, Jason Ewart, Philip Horton, Danielle Garten*, for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General*, for appellee.

*Aimee R. Maxwell, Charles J. Ogletree, Jr., Keith Findley, John L. Hardiman*, amici curiae.