# SUPREME COURT OF THE UNITED STATES

## IN RE TROY ANTHONY DAVIS

### ON PETITION FOR WRIT OF HABEAS CORPUS

No. 08–1443.   Decided August 17, 2009

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

Today this Court takes the extraordinary step—one not taken in nearly 50 years—of instructing a district court to adjudicate a state prisoner's petition for an original writ of habeas corpus. The Court proceeds down this path even though every judicial and executive body that has examined petitioner's stale claim of innocence has been unpersuaded, and (to make matters worst) even though it would be impossible for the District Court to grant any relief. Far from demonstrating, as this Court's Rule 20.4(a) requires, "exceptional circumstances" that "warrant the exercise of the Court's discretionary powers," petitioner's claim is a sure loser. Transferring his petition to the District Court is a confusing exercise that can serve no purpose except to delay the State's execution of its lawful criminal judgment. I respectfully dissent.

Eighteen years ago, after a trial untainted by constitutional defect, a unanimous jury found petitioner Troy Anthony Davis guilty of the murder of Mark Allen MacPhail. The evidence showed that MacPhail, an off-duty police officer, was shot multiple times after responding to the beating of a homeless man in a restaurant parking lot. *Davis* v. *State*, 263 Ga. 5, 5–6, 426 S. E. 2d 844, 845–846, cert. denied, 510 U. S. 950 (1993). Davis admits that he was present during the beating of the homeless man, but he maintains that it was one of his companions who shot Officer MacPhail. It is this claim of "actual innocence"—the same defense Davis raised at trial

but now allegedly supported by new corroborating affida-vits—that Davis raises as grounds for relief. And (pre-sumably) it is this claim that the Court wants the District Court to adjudicate once the petition is transferred.

Even if the District Court were to be persuaded by Davis's affidavits, it would have no power to grant relief. Federal courts may order the release of convicted state prisoners only in accordance with the restrictions imposed by the Antiterrorism and Effective Death Penalty Act of 1996. See *Felker* v. *Turpin*, 518 U. S. 651, 662 (1996). Insofar as it applies to the present case, that statute bars the issuance of a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly estab-lished Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1).

The Georgia Supreme Court rejected petitioner's "ac-tual-innocence" claim on the merits, denying his extraor-dinary motion for a new trial. Davis can obtain relief only if that determination was contrary to, or an unreasonable application of, "clearly established Federal law, as deter-mined by the Supreme Court of the United States." It most assuredly was not. This Court has *never* held that the Constitution forbids the execution of a convicted de-fendant who has had a full and fair trial but is later able to convince a habeas court that he is "actually" innocent. Quite to the contrary, we have repeatedly left that ques-tion unresolved, while expressing considerable doubt that any claim based on alleged "actual innocence" is constitu-tionally cognizable. See *Herrera* v. *Collins*, 506 U. S. 390, 400–401, 416–417 (1993); see also *House* v. *Bell*, 547 U. S. 518, 555 (2006); *District Attorney's Office for Third Judi-cial Dist.* v. *Osborne, ante*, at 18. A state court cannot possibly have contravened, or even unreasonably applied,

"clearly established Federal law, as determined by the Supreme Court of the United States," by rejecting a type of claim that the Supreme Court has not once accepted as valid.

JUSTICE STEVENS says that we need not be deterred by the limitations that Congress has placed on federal courts' authority to issue the writ, because we cannot rule out the possibility that the District Court might find those limitations unconstitutional as applied to actual-innocence claims. *Ante,* at 2 (concurring opinion). (This is not a possibility that Davis has raised, but one that JUSTICE STEVENS has imagined.) But acknowledging that possibility would make a nullity of §2254(d)(1). There is no sound basis for distinguishing an actual-innocence claim from any other claim that is alleged to have produced a wrongful conviction. If the District Court here can ignore §2254(d)(1) on the theory that otherwise Davis's actual-innocence claim would (unconstitutionally) go unaddressed, the same possibility would exist for *any* claim going beyond "clearly established Federal law."

The existence of that possibility is incompatible with the many cases in which we have reversed lower courts for their failure to apply §2254(d)(1), with no consideration of constitutional entitlement. See, *e.g.*, *Knowles* v. *Mirzayance*, 556 U. S. \_\_, \_\_ (2009) (slip op., at 9–10); *Wright* v. *Van Patten*, 552 U. S. 120, \_\_ (2008) (slip op., at 5–6) *(per curiam); Carey* v. *Musladin*, 549 U. S. 70, 76–77 (2006). We have done so because the argument that the Constitution requires federal-court screening of all state convictions for constitutional violations is frivolous. For much of our history, federal habeas review was not available even for those state convictions claimed to be in violation of clearly established federal law. See *Stone* v. *Powell*, 428 U. S. 465, 474–476 (1976); Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L. Rev. 441, 465–466 (1963); L. Yackle,

Postconviction Remedies §19 (1981). It seems to me improper to grant the extraordinary relief of habeas corpus on the possibility that we have approved—indeed, directed—the disregard of constitutional imperatives in the past. If we have new-found doubts regarding the constitutionality of §2254(d)(1), we should hear Davis's application and resolve that question (if necessary) ourselves.*

Transferring this case to a court that has no power to grant relief is strange enough. It becomes stranger still when one realizes that the allegedly new evidence we shunt off to be examined by the District Court has already been considered (and rejected) multiple times. Davis's postconviction "actual-innocence" claim is not new. Most of the evidence on which it is based is almost a decade old. A State Supreme Court, a State Board of Pardons and Paroles, and a Federal Court of Appeals have all considered the evidence Davis now presents and found it lacking. (I do not rely upon the similar conclusion of the Georgia trial court, since unlike the others that court relied substantially upon Georgia evidentiary rules rather than the unpersuasiveness of the evidence Davis brought forward. See App. to Pet. for Writ of Habeas Corpus 57a–63a.)

The Georgia Supreme Court "look[ed] beyond bare legal principles that might otherwise be controlling to the core question of whether a jury presented with Davis's allegedly-new testimony would probably find him not guilty or give him a sentence other than death." *Davis* v. *State*, 283 Ga. 438, 447, 660 S. E. 2d 354, 362 (2008). After analyzing each of Davis's proffered affidavits and comparing them with the evidence adduced at trial, it concluded that it was not probable that they would produce a different

—————

*JUSTICE STEVENS' other arguments as to why §2254(d)(1) might be inapplicable—that it does not apply to original petitions filed in this Court (even though its text covers all federal habeas petitions), and that it contains an exception (not to be found in its text) for claims of actual innocence—do not warrant response.

result. See *id.*, at 440–447, 660 S. E. 2d, at 358–363.

When Davis sought clemency before the Georgia Board of Pardons and Paroles, that tribunal stayed his execution and "spent more than a year studying and considering [his] case." Brief in Opposition 14–15 (statement of Board of Pardons and Paroles). It "gave Davis' attorneys an opportunity to present every witness they desired to support their allegation that there is doubt as to Davis' guilt"; it "heard each of these witnesses and questioned them closely." *Id.*, at 15. It "studied the voluminous trial transcript, the police investigation report and the initial statements of the witnesses," and "had certain physical evidence retested and Davis interviewed." *Ibid.* "After an exhaustive review of all available information regarding the Troy Davis case and after considering all possible reasons for granting clemency, the Board . . . determined that clemency is not warranted." *Ibid.*

After reviewing the record, the Eleventh Circuit came to a conclusion "wholly consonant with the repeated conclusions of the state courts and the State Board of Pardons and Paroles." 565 F. 3d 810, 825 (2009). "When we view all of this evidence as a whole, we cannot honestly say that Davis can establish by clear and convincing evidence that a jury would not have found him guilty of Officer MacPhail's murder." *Id.*, at 826.

Today, without explanation and without any meaningful guidance, this Court sends the District Court for the Southern District of Georgia on a fool's errand. That court is directed to consider evidence of actual innocence which has been reviewed and rejected at least three times, and which, even if adequate to persuade the District Court, cannot (as far as anyone knows) form the basis for any relief. I truly do not see how the District Court can discern what is expected of it. If this Court thinks it possible that capital convictions obtained in full compliance with law can never be final, but are always subject to being set

aside by federal courts for the reason of "actual innocence," it should set this case on our own docket so that we can (if necessary) resolve that question. Sending it to a district court that "might" be authorized to provide relief, but then again "might" be reversed if it did so, is not a sensible way to proceed.